IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NIDIA HESTON, Natural Mother, | § | |
| Legal Parent and Next Friend of A.H., | § | |
| *Plaintiffs,* | § | |
| V. | § | CIVIL ACTION NO.:   1:18-cv-0018-RP |
| THE SCHOOL BOARD OF AUSTIN | § | |
| INDEPENDENT SCHOOL DISTRICT | § | |
| and JENNIFER HARDISON, | § | |
| *Defendants.* | § | |

## DEFENDANT AUSTIN INDEPENDENT SCHOOL DISTRICT'S MOTION TO DISMISS

Defendant Austin Independent School District ("AISD" or "the District") respectfully presents its Motion to Dismiss Plaintiffs' First Original Complaint ("Complaint") for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and in support thereof would show the following:

## I.       INTRODUCTION

Plaintiffs[1] have sued AISD under various theories related to his educational opportunities at the District, including for recovery of an alleged assault against A.H. by Defendant Jennifer Hardison in her role as a 1:1 special education teacher's aide to A.H.  After realizing that the District is not liable in tort, and not wishing to exhaust administrative remedies under the the Individuals with Disabilities Education Act ("IDEA"), Plaintiffs are attempting to artfully plead their claims as discrimination claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504") and the Americans with Disabilities Act ("ADA"), and claims for violation of the United States Constitution, pursuant to 42 U.S.C. § 1983 ("Section 1983"). As demonstrated below, all of Plaintiffs' claims should be dismissed for failure to exhaust administrative remedies, waiver, and/or failure to plead a plausible claim for relief.

---

[1] In their First Original Complaint, Plaintiffs are identified as Nidia Heston, Natural Mother, Legal Parent And Next Friend of A.H.

## II.      STATEMENT OF UNDISPUTED JURISDICTIONAL FACTS

On March 30, 2016, Hardison was a teacher's aide assigned on a 1:1 basis to A.H. as part of his Individualized Education Plan ("IEP") under the Individuals with Disabilities Education Act ("IDEA"). On that date Hardison threw a trash can, which led to A.H. being injured.

Thereafter, the District received a Notice of Filing of Request for a Special Education Due Process Hearing on August 16, 2016, which was later amended on November 3, 2016.  (Exhibit 1).[2] On December 12, 2016, Plaintiffs and AISD signed a Compromise Settlement Agreement ("Agreement"). (Exhibit 2).

On December 14, 2016, an Order of Dismissal with Prejudice was signed by the Special Education Hearing Officer for the Texas Education Agency ("TEA"). (Exhibit 3). The Order stated: "Because it appears that all matters in controversy have been resolved between the parties through informal settlement and mediation and that Petitioner no longer wishes to pursue his request for a due process hearing it is therefore ORDERED that this cause is hereby DISMISSED WITH PREJUDICE." (*Id.*).

In the Agreement resulting in the dismissal, Plaintiffs agreed to the following:

C.2. Claimants reserve the right to file federal, state, and local claims against the District that are not identified in C.I., including claims that have arisen under Texas Education Code §22.0511, including the right to exhaust the pending local grievance filed pursuant to District policy FNG(LOCAL), and claims pursuant to 42 U.S.C. Section 1983, Section 504 of the 1973 Rehabilitation Act (as amended) and its regulations, and the Americans with Disabilities Act (as amended) and its regulations. Also reserved is any requirement to file a complaint with TEA pursuant Education Code 22.0511. The Parents agree to dispose of all disputes related to the appropriateness of educational services and resources for Student, but the Parents are reserving their right to pursue personal injury claims related to an alleged incident involving a prior District employee, Jennifer Hardison, that occurred on March 30, 2016, at Small Middle School.

(Exhibit 2, p. 4). This lawsuit followed.

---

[2] The Court may take judicial notice of Exhibits 1, 2, and 3 as they are governmental records. Fed. R. Evid. 201(b); *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (holding that a "district court took appropriate judicial notice of publicly-available documents and transcripts produced by [an administrative agency], which were matters of public record directly relevant to the issue at hand") (citation omitted); *accord, Crosby v. Philip Holdings, LLC*, No. CIV.A. H-12-01749, 2012 WL 5456360, at *2 n.5 (S.D. Tex. Nov. 7, 2012); *Hawkins v. AT & T*, No. 3:12-CV-1173-L, 2013 WL 4505154, at *3 (N.D. Tex. Aug. 23, 2013).

### III.    LEGAL STANDARD

**A.    Rule 12(b)(1) – Lack of Subject Matter Jurisdiction**

A party may file a motion to dismiss under Fed. R. Civ. P. 12(b)(1) at any time during the course of litigation, and the court must dismiss the action if it determines at any time that it lacks subject-matter jurisdiction. *King v. Life Sch.*, 809 F.Supp.2d 572, 576 (N.D. Tex. 2011).   "[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

**B.    Rule 12(b)(6) – Failure to State a Claim**

If a complaint fails to state a claim upon which relief can be granted, a court should dismiss the complaint as a matter of law. *See* Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level. *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012) (citing *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010)). Plaintiffs must have "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). It is also important to

note that the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id.*; *accord Twombly*, 550 U.S. at 555.

## IV.    LEGAL ARGUMENT

As demonstrated below, Plaintiffs have failed to state sufficient factual allegations to avoid dismissal of claims made pursuant to Section 504,  the ADA, and the Constitution.

**A.    Plaintiffs Have Failed to Exhaust Administrative Remedies under IDEA and all Claims Should Accordingly be Dismissed.**

All of Plaintiffs' substantive claims, including those brought pursuant to Section 504, the ADA, and the Constitution should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1)[3] or 12(b)(6) based on Plaintiffs' failure to exhaust administrative remedies.

**1.    Plaintiffs did not exhaust.**

By moving to dismiss their IDEA claims and "all disputes related to the appropriateness of educational services and resources" without a due process hearing (Exhibits 2, 3), Plaintiffs failed to exhaust administrative remedies. *See Reyes v. Manor Indep. Sch. Dist.*, A-14-CA-00469-SS, 2016 WL 1601219, at *3 (W.D. Tex. Apr. 20, 2016), *aff'd*, 850 F.3d 251 (5ᵗʰ Cir. 2017)("To prove exhaustion . . . the SEHO must have made 'findings and [a] decision' to satisfy the exhaustion requirement.")(citing 20 U.S.C. § 1415(g); *Houston v. Encinitas Union Sch. Dist.*, No. 00cv2475, 2008 WL 2220414, at *3 (S.D. Ca1. May 27, 2008) (concluding the plaintiffs had not exhausted their administrative remedies because the SEHO explicitly stated he would make a final decision at a later date)).

**2.    Exhaustion is required.**

---

[3] Although the Fifth Circuit has noted a split of authorities, this District has found exhaustion of administrative remedies under the IDEA to be jurisdictional. *See Crawford v. San Marcos Consol. Indep. Sch. Dist.*, A-13-CV-206 LY, 2015 WL 236653, at *3 (W.D. Tex. Jan. 15, 2015), *subsequently aff'd*, 637 Fed. Appx. 808 (5th Cir. 2016); *E.G. v. Northside Indep. Sch. Dist.*, CV SA-12-CA-949-FB, 2014 WL 12537177, at *24 n. 7 (W.D. Tex. Mar. 31, 2014). The Northern District of Texas also so holds. *See Reed v. Kerens Indep. Sch. Dist.*, 3:16-CV-1228-BH, 2017 WL 2463275, at *5 (N.D. Tex. June 6, 2017)(citing *Dabney v. Highland Park Indep. Sch. Dist.*, No. 3:15-CV-2122-L, 2016 WL 1273467, at *6 n.2 (N.D. Tex. Mar. 31, 2016) (noting "[t]he IDEA's exhaustion requirement has been interpreted as jurisdictional")(citations omitted); *Hooker v. Dallas Indep. Sch. Dist*, No. 3:09-CV-1289-D, 2010 WL 4025877, at *6 (N.D. Tex. Oct. 13, 2010) (noting "the court holds that the exhaustion requirement of the IDEA is jurisdictional").

It is well established that the IDEA requires a plaintiff to exhaust administrative remedies prior to asserting IDEA-based claims in federal court. 20 U.S.C. §§ 1400-1482.   The statute mandates administrative procedures for addressing claims based on "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education ["FAPE"] to such child." 20 U.S.C. § 1415(b)(6)(A).

A plaintiff is required to exhaust these administrative procedures before bringing a federal lawsuit to assert a denial of FAPE or to challenge a school district's violation of the IDEA. *Id.* at § 1415(l); *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992) (holding that where a plaintiff is asserting claims that could have, or properly should have, been brought under the IDEA, the plaintiff is required to first exhaust their administrative remedies by having the issues heard and ruled on by the State educational agency as provided for in 20 U.S.C. §§ 1415(b)-(f)). Further, the exhaustion requirement extends to all claims "seeking relief that is also available under [the IDEA]," and "a plaintiff cannot avoid the exhaustion requirements of the IDEA by 'repackaging' the 'claims under some other statute.'" *Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F.Supp.3d 662, 685 (W.D. Tex. 2015) (quoting *Marc V. v. N.E. Indep. Sch. Dist.*, 455 F.Supp.2d 577, 592 (W.D. Tex. 2006)).

### 3.   The Supreme Court's Guidance in Fry

The U.S. Supreme Court recently addressed the proper analysis for a claim where a plaintiff tries to use other federal statutes to avoid the requirement to exhaust the administrative remedies set forth in IDEA. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017). In *Fry*, as in this case, the plaintiff had asserted claims pursuant to Title II of the ADA, and Section 504 of the Rehabilitation Act, alleging discrimination based on a failure to accommodate by the school denying a request to allow the student to use a service dog while attending school.   Also, like the Plaintiffs in this case, the plaintiff in *Fry also* brought a Constitutional claim. *Id*. at 750. The Court made no determination as to whether the plaintiff under the specific facts of the case was required to exhaust administrative remedies, but instead vacated

and remanded the case for purposes of conducting an analysis consistent with the Court's opinion. *Id.* at 759.

The IDEA allows a plaintiff to seek redress under other federal laws that provide rights to children with disabilities. 20 U.S.C. §1415(l).  However, the statute provides that IDEA administrative exhaustion is not required *only* where "the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee – what the Act calls a "free appropriate public education [FAPE]." *Id.* at 748.  Where the plaintiff seeks relief for denial of a FAPE, the statutory requirement for exhaustion is applicable. *Id.*  But Plaintiffs in this case specifically avoid referencing the IDEA or a "denial of FAPE" (though they do reference FAPE itself at least twice)(Complaint, ¶15, 16). Is the Court, therefore, bound to presume FAPE is not involved? The *Fry* Court rejected such a farcical conclusion:

> What matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading. * * * The statutory language asks whether a lawsuit in fact 'seeks' relief available under the IDEA—not, as a stricter exhaustion statute might, whether the suit 'could have sought' relief available under the IDEA (or, what is much the same, whether any remedies 'are' available under that law). * * * A court deciding whether § 1415(l) applies must therefore examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education.

*Fry*, 137 S. Ct. at 755.

The court accomplishes this by analyzing the substance, not surface, of the complaint to determine whether the plaintiff, regardless of the labels and terms used, is in essence contesting the adequacy, provision, or delivery of a student's special education program or the denial of a FAPE, and therefore asserting claims for which a remedy is available under the IDEA. *Id.*

The Supreme Court recognized attorneys would try to avoid exhaustion prerequisites, noting "a 'magic words' approach would make § 1415(l)'s exhaustion rule too easy to bypass." *Fry*, 137 S. Ct. at 755. The Supreme Court counseled that, in addressing whether the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, one should keep in mind the "diverse means and ends

of the statutes" involved. *Id.* The Court noted: "[IDEA's] goal is to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her 'unique needs.'" *Id.* (citations omitted). "[T]he IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions." *Fry*, 137 S. Ct. at 756.

In this case, Plaintiffs' Complaint makes clear that A.H. claims to have unique needs due to his disability and what Plaintiffs are complaining about are the District's alleged failures to meet these needs. What Plaintiff complains about are alleged failures to provide educational services and accommodations, not access.

The *Fry* Court provided courts a set of hypothetical questions to determine whether or not a plaintiff is required to first exhaust under IDEA:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?

*Fry*, 137 S. Ct. at 756; *accord Reyes*, 850 F.3d at 256-57 (considering *Fry's* two questions and holding, plaintiff's § 504 claims overlapped with IDEA claims and thus required exhaustion).

The Court concluded that "when the answer in no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim." *Id.* at 756. It is critical to also recognize the Court's conclusion that these two questions are not posed simply to the *nature* of the claim being asserted, be it Title II of the ADA, or Section 504, as the Court has already stated that claims such as these can always be made by anyone in or out of a school setting. Accordingly, if the analysis was simply "can someone other than a child in a school setting bring a claim pursuant to Title II ADA or Section 504," the answer would always be yes to both questions, and there would be no requirement of exhaustion under any circumstances for such claims. That basic type of analysis is not what the Court mandates in *Fry*. Rather, the Court is stating that you must look to the

bases, substance, and facts alleged by the plaintiff in support of their particular claims, and then apply the two questions presented to determine whether only a child in a school setting could bring that specific *type* of ADA Title II, Section 504, or other claim.

Additionally, the *Fry* Court determined that "a further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings.  In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute-thus staring to exhaust the Act's remedies before switching midstream." *Id.* at 757.  Continuing, the Court opined that a "plaintiff's initial choice to pursue that [IDEA] process may suggest that she is indeed seeking relief for the denial of a FAPE-with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy." *Id.* "[P]rior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *Id*.

### 4.    Applying the *Fry* Analysis to Plaintiff's Claims

#### a.    Previous Procedural History

Here, Plaintiffs filed a petition requesting a due process hearing before a Texas Education Agency Special Education Hearing Officer on August 15, 2016, a true and correct copy of which is attached hereto and fully incorporated by reference. (Exhibit 1). Plaintiff's special education due process complaint includes the same facts (including the Hardison incident[4]), the same allegations (including lack of supervision and training[5]), and the same causes of action (Section 504, ADA[6]) as Plaintiff's Complaint *except* her special education due process request additionally sought relief under the IDEA alleging a denial of a FAPE. *See* Exhibit 1, generally. Plaintiffs abandoned the administrative process prior to hearing and have elected to sue. However, the same facts and allegations still involve a denial of

---

[4] Exhibit 1, ¶I.1.
[5] *Id.* and at VI.3, 10, 11, 17, 19.
[6] *Id*. at VIII.

FAPE, even though Plaintiffs would prefer them not to. Just as the Court in *Fry* discussed, Plaintiffs' strategic ploy to abort the due process proceedings and shift to judicial proceedings prior to full exhaustion, is strong evidence that Plaintiff's claim concerns a denial of a FAPE "even if even if the complaint never explicitly uses that term."[7] *See Fry*, 137 S. Ct. at 757.

### b.    The Nature of Plaintiff's Complaint and the "Two Question Test"

A substantive review of the Complaint in this matter demonstrates that Plaintiffs are asserting a denial of a FAPE and seeking remedies for that denial, relief available under the IDEA.  Accordingly, Plaintiff was required to administratively exhaust her claims.

Plaintiffs' Complaint is replete with allegations related to the denial of FAPE and A.H.'s unique needs and educational plan, including some specific references to FAPE:

- "[T]the District is required to provide A.H., and other students with a disability, what is termed a *Free Appropriate Public Education* ("FAPE") pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; 34 C.F.R. §104.33."  (Complaint, ¶ 15)
- "One such element of FAPE under Section 504 is to assure students are educated in an environment free from physical and verbal harassment." (Complaint, ¶16).
- "In order to assure that A.H. and other students similarly situated have their civil rights protected, the School District is required to hire qualified staff so as to serve the unique and individualized needs of the student." (Complaint, ¶18).
- "As a student with disabilities, he often requires assistance by adult authority figures, especially teachers and staff at school." (Complaint, ¶26).
- "All staff working with A.H. are required to be specifically trained so that when A.H. becomes emotionally unstable at school his physical and emotional safety is assured. Further, the supervision must be provided in a manner free from verbal and physical harassment." (Complaint, ¶27).
- "A.H. started receiving special education services in preschool." (Complaint, ¶28).
- "A.H. intelligence is within the average range, but he struggles with behavioral issues." (Complaint, ¶29).
- "A.H. has had paraprofessionals assist him throughout his school career … [who needed to] receive adequate training to meet A.H.'s unique needs." (Complaint, ¶31).
- "At a meeting on or about January 23, 2015, Ms. Heston requested a 1:1 paraprofessional for A.H. with adequate training to meet A.H.'s unique needs." (Complaint, ¶38).
- "Throughout the 2015-2016 school year, Ms. Heston repeatedly requested that A.H. receive more support and assistance to ensure his safety at school." (Complaint, ¶42).
- "Unfortunately, Jennifer Hardison had not been correctly trained and supervised as to A.H.'s unique and individualized needs." (Complaint, ¶45).
- Instead of providing the correct interventions according to School Board Policies and

---

[7] Interestingly, as will be discussed below, Plaintiffs' Complaint does use the term FAPE throughout.

Procedures, training guidelines and professional standards of care for educators, and related to A.H.'s unique and individualized needs, Jennifer Hardison began to physically abuse this poor child for simply being himself by throwing a trash can at him." (Complaint, ¶47).

- "The School District failed to provide . . . :
  a. a psychological assessment;
  b. school-based counseling services;
  c. an aide or shadow to observe the Student at the school; or
  d. social skills training." (Complaint, ¶71).
- "Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled students unique and individualized needs, and fails to accommodate that child's disability and keep the student safe, it violates Section 504." (Complaint, ¶77).
- "In addition and in the alternative, the acts and the omissions of the School District rose to the level of a gross mismanagement and misjudgement [sic] of A.H.'s educational plan." (Complaint, ¶83).

In addition, there are multiple references to other school-specific issues (Complaint, ¶ 33 [reference to 6th grade year], ¶34 [call from school], ¶36 [reference to school], ¶37 [meeting with principal about school staffing], ¶41 [reference to middle school], ¶44 [reference to conference with staff and parental request regarding staff], ¶55 [reference to an ARD meeting]). In addition, in paragraphs 60-72 outlining the failures of the school district, the assertions relate to alleged requirements that would not apply outside the school setting.

The alleged failures of the District to address A.H.'s unique and individualized needs as a special education student, and to provide him with services he allegedly required as a special education student, are allegations asserting the denial of a FAPE. These allegations are nothing if not claims that the District violated the IDEA by failing to provide a FAPE. Finally, the very first element of damages claimed by Plaintiff in this matter is "A deprivation of educational opportunities in the past and future." (Complaint, ¶112.a.). For a special education student, the loss of educational opportunities is synonymous with declaring that the student has been denied a FAPE as required by the IDEA.

The substance of Plaintiff's Complaint leaves little doubt that Plaintiff is alleging denial of a FAPE under the IDEA. After applying the "Two Question Test" adopted by the Supreme Court,

however, even the smallest doubt as the gravamen of the Complaint is removed. The exhaustion requirements pursuant to 20 U.S.C. §1415(l) should be applied to Plaintiff's claims.

### c.     Application of the *Fry* Court's "Two Question Test"

Again, the first question to be posed is "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school-say, a public theater or library?    The second is, "could an *adult* at the school-say, an employee or visitor-have pressed essentially the same grievance?" *Fry* at 15 (emphasis in original).

Applying these two questions to Plaintiffs' Section 504, ADA, and Constitutional claims, specifically the type of claims that Plaintiffs are asserting, the answer to both questions is clearly "no." First, Plaintiffs could not assert their claims if the alleged conduct occurred at a public theater or library; they are uniquely related to the services available and provided only at school. As to the second question, whether someone other than a student could press essentially the same claims, the answer to that question is "no" as well.

In answering the second question, it is important to recognize the specific types of claims that Plaintiffs are asserting. Plaintiffs' Section 504 claim is related to an alleged hostile education environment created by a teacher against a student, with specific protections that are available only to students. *See, e.g., Estate of Lance v. Lewisville Indep. Sch. Dist.,* 743 F.3d 982 (5th Cir. 2014); it is not a generalized claim of exclusion from a federal program. Similarly, the ADA claim is also not one such as an architectural barriers claim that would be available to a disabled member of the general public who might enter a school. Rather, Plaintiffs are claiming A.H. was denied accommodations that were available to him only by virtue of being a *student* with disabilities.

Under the Two Question Analysis created in *Fry*, it is clear that Plaintiff is seeking recovery for IDEA based claims, and that exhaustion is required.

### 5.  Requiring Exhaustion is Consistent with Post-Fry Jurisprudence.

Since the *Fry* case, courts have had the opportunity to apply the principles enunciated and, in

cases similar to the one at bar, have found that a plaintiff cannot circumvent the administrative exhaustion requirement by simply repackaging IDEA claims under other statutes without exhausting administrative remedies under the IDEA.

For example, in *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125 (3rd Cir. 2017), the court recently required exhaustion of a high school student's ADA, Section 504, and Constitutional claims related to his allegations that he sustained a concussion and experienced post-concussive syndrome, and alleging that school failed to accommodate his disabilities. The court stated that a review of the student's complaint shows that his "grievances all stem from the alleged failure to accommodate his condition and fulfill his educational needs…" *Id.* at 133. The court further stated: "A review of his detailed factual allegations shows that the conduct about which he complains would not have occurred outside the school setting and that a nonstudent could not (and would not) have 'pressed essentially the same grievance.'" *Id.* (quoting *Fry*, 137 S.Ct. at 756).

In another case, *J.M. v. Francis Howell Sch. Dist.*, 850 F3d 944 (8th Cir. 2017), the court held that a complaint about improper discipline techniques was a FAPE claim, requiring exhaustion under the IDEA.  The court stated: "In *Fry*, the Supreme Court declined to address whether exhaustion is required 'when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests—here, money damages for emotional distress—is not one' the IDEA provides. 850 F.3d at 950 (quoting *Fry*, 137 S.Ct. at 752 n.4). However, the court stated that it has noted that the IDEA's exhaustion requirement remains the general rule, regardless of whether the administrative process offers the particular type of relief that is being sought. *Id.* (citations omitted). Thus, even though the plaintiff sought compensatory and punitive damages, the court nevertheless required exhaustion. *Id.*

Another court has also debunked the notion that simply seeking a certain type of damages can enable a plaintiff to avoid IDEA exhaustion in a post-*Fry* era. In *J.L. v. Wyoming Valley West Sch. Dist.*, 2018 WL 798581 (3rd Cir. 2018), the court found the plaintiff was required to exhaust administrative remedies for claims brought under Section 504 and the Constitution for physical injuries sustained by a

disabled student at the hands of a van driver employed by the school district while restraining the student. *Id.* at *2. "The use of restraints would not have occurred outside the school setting and a nonstudent could not (and would not) have pressed essentially the same grievance." *Id.* (quoting *J.M.*, 850 F.3d at 133)(quoting *Fry*, 137 S.Ct. at 756)(internal quotations and alterations omitted)(other citation omitted). The court, relying on a pre-*Fry* case, stated: "Our conclusion does not change because J.L. requested money damages, which are not available under the IDEA and cannot be awarded at an administrative hearing." *Id.* at *3 (citing *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014)). The court stated that "'[t]his is not dispositive' because (1) the complaint did not seek money damages exclusively, (2) district courts are empowered to grant relief beyond that requested, and (3) money damages may sometimes be awarded as reimbursement." *Id.* (quoting *Batchelor*, 759 F.3d at 276–77). The court noted: "The courts of appeals are in accord that a prayer for money damages does not necessarily absolve a plaintiff from exhausting administrative remedies under the IDEA." *Id.* n. 3 (citing *[J.M.]*, 850 F.3d at 950; *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 785–86 (10th Cir. 2013); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 64 (1st Cir. 2002); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000); *N.B. ex rel. D.G. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996)).

As with the Third Circuit, this Court has found pre-*Fry* that, even though a plaintiff seeks compensatory damages under the IDEA and monetary damages under Section 504, they still may be required to exhaust administrative remedies depending on the theory behind the grievance. *Reyes*, 2016 WL 1601219, at *3. The decision in *Fry* reinforces that the theory of the grievance is what counts, so there is no need to abandon this principle. The court should follow *J.M.* and *J.L.* to find that seeking compensatory damages does not excuse exhaustion.

In the instant action, Plaintiffs have not exhausted their administrative remedies, and as a result

Plaintiffs' claims must be dismissed. [8]

**B.      In the Alternative, Plaintiffs Have Failed to State a Claim Under Section 504.**

In addition to being barred by failure to exhaust administrative remedies, Plaintiffs' claims must be dismissed on the alternative basis that they fail to state a claim under Section 504 for disability discrimination. Plaintiffs claim the District "failed to keep A.H. safe from harm, and failed to provide him an environment that was not hostile," and violated his rights "by not keeping him as safe as his non-disabled peers." These assertions are insufficient to state a claim for a violation of Section 504.

Claims of a hostile environment in the education setting are generally analyzed using the same framework whether they have their origin in Title IX (gender) or Section 504 (disability). *See Estate of Lance v. Lewisville Indep. Sch. Dist.,* 743 F.3d 982, 995-96 (5th Cir. 2014); *A.N. v. Mart Indep. Sch. Dist.*, W-13-CV-002, 2013 WL 11762157, at *8 (W.D. Tex. Dec. 23, 2013), *aff'd sub nom. Nevills v. Mart Indep. Sch. Dist.*, 608 Fed. Appx. 217 (5th Cir. 2015). Although *Estate of Lance* and *A.N.* were both student-student harassment cases, the Fifth Circuit recently confirmed that teacher-student claims are likewise analyzed using the same framework, which developed beginning with the Supreme Court's decision in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998). *See Salazar v. S. San Antonio Indep. Sch. Dist.*, 690 Fed. Appx. 853, 864 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 369, 199 L. Ed. 2d 265 (2017). In addressing the issue of when a school district can be held liable in damages in cases involving a teacher's sexual harassment of a student, the *Gebser* Court stated that "'damages may not be recovered in those circumstances unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's conduct.'" *Id.* (quoting *Gebser*, 524 U.S. at 277, 118 S.Ct. 1989).

---

[8] Because Plaintiffs entered into a settlement agreement resolving "all disputes related to the appropriateness of educational services and resources" even if the claims were not required to be exhausted, they would be waived under the terms of Exhibit 2. The District seeks dismissal on that basis in the alternative.

Thus, for Plaintiffs to state a claim for a hostile education environment based on disability under Section 504, they would have to allege that a school official had actual notice of Hardison's conduct and was deliberately indifferent to it. S*ee Estate of Lance,* 743 F.3d at 996; *A.N.*, 2013 WL 11762157, at *8 ((quoting *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 454 (6th Cir. 2008) (citing *Werth v. Bd. of Directors of the Pub. Sch. of Milwaukee*, 472 F.Supp.2d 1113, 1127 (E.D. Wis. 2007)). Plaintiffs have not and cannot make such allegations; therefore, their claims under Section 504 must be dismissed.

**C.      In the Alternative, Plaintiffs Have Failed to State a Claim Under the ADA.**

In addition to being barred by the failure to exhaust, Plaintiffs' allegations that the District violated Title II of the ADA by "failing and refusing to reasonably accommodate and modify its programs and services, so as to provide him educational services to the same extent as his non-disabled peers" (Complaint, ¶90) are not sufficient to state a claim under the ADA.

Under Title II of the ADA, a plaintiff must show: (1) they are a qualified individual within the meaning of the ADA; (2) that they were excluded from participation in or denied the benefits, services or programs of the public entity, or that the public entity otherwise discriminated against the individual; and (3) that such exclusion or discrimination was because of the individual's disability. *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).  To recover monetary damages, the plaintiff must show that there was intentional discrimination. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).   In this matter, Plaintiffs have made no allegations that the District intentionally discriminated against A.H., and, at a minimum, any claims for monetary damages should be dismissed. In addition, Plaintiffs' claims should be dismissed in their entirety because there is no allegation that A.H. was excluded from the District's programs in any way, or that the District discriminated against A.H.  The claim, factually, is that the District, through its implementation of A.H.'s educational program failed to prevent the incident with Hardison.  As explained above in relation to Plaintiffs' Section 504 claims, Plaintiffs have not alleged any facts that would allow the Court to conclude that the District

should be responsible for alleged conduct of which it had no notice.   Plaintiffs have failed to state a cause of action for their claim under the ADA, and that claim should be dismissed.

**D.      In the Alternative, Plaintiffs Have Failed To State A Claim Under 42 U.S.C. § 1983.**

Plaintiffs also claim constitutional violations under the Fourth Amendment, and the due process and equal protection clauses of the Fourteenth Amendment, brought via Section 1983.

"Section 1983 provides a private right of action against parties acting 'under color of any statute, ordinance, regulation, custom, or usage, of any State' to redress the deprivation of rights secured by the United States Constitution or federal law." *Bauer v. Tex.*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988)). "Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Id.* (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). "To prevail on a section 1983 claim, the plaintiff must show that: 1) the offending conduct was committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).

In addition, governmental entities are not liable under Section 1983 on a respondeat superior liability theory. *See Jett v. Dallas Independent School District*, 91 U.S. 701 (1989);  *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court held:

> [T]he language of § 1983, read against the background of [its] legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tort-feasor —or, in other words, a municipality cannot be held liable under section 1983 on a *respondeat superior* theory.

*Id.* at 691 (italics in original). Thus, liability under Section 1983 comes only when a constitutional injury is caused by an "official policy" of the District.  Specifically, "[m]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom."  *Zarnow v. City of Wichita Falls*, *Tex.*, 614 F.3d

161, 166 (5th Cir. 2010), *cert. denied*, 131 S.Ct. 3059 (2011) (citation omitted).

Texas law is clear that final policymaking authority in an independent school district rests with the district's board of trustees. *See Jett v. Dallas Independent School Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993); *see also Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247–48 (5th Cir. 2003) (distinguishing between "decision-making authority," which may be delegated to school administrators, and "policymaking authority," which "lies exclusively with the Board [of Trustees]" under Texas law); *see also* TEX. EDUC. CODE § 11.151(b) ("The trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district.").

The Fifth Circuit has defined "official policy" to be:

1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by [the local government unit]'s lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or
2.  A persistent widespread practice of [the local government unit's] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the local government's] policy.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)(en banc), *cited in Zarnow*, 614 F.3d at 166.

Just as with any other type of claim, to survive a motion to dismiss for failure to state a claim, these elements of a *Monell* claim must be pleaded with more than labels and conclusions. As the Court in *Iqbal* stated, "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678-79. Hence, in that case, allegations that defendants "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest," that a defendant was the "principal architect" of such an invidious policy and that another defendant was "instrumental" in adopting and executing it were seen as bare assertions, amounting to nothing more than a "formulaic recitation of the elements" of a constitutional

- 17 -

discrimination claim. *Id.* at 680-81. As such, the allegations were conclusory and were not entitled to be assumed true. *Id.*

Similarly, in this case Plaintiffs have utterly failed to state a claim of *Monell* liability against AISD. Plaintiffs have not and cannot point to any policymaking action by the AISD Board of Trustees in support of their claims brought under Section 1983. In addition, Plaintiffs have not and cannot point to an official policy of AISD that would meet the second element of a *Monell* claim. In an apparent attempt to track what is required by *Monell*, in paragraphs 101-105 of the Complaint, Plaintiffs reference the District's alleged failure to have policies, procedures, practices and customs in place to correctly hire, train, and supervise employees.[9] However, this formulaic recitation is not sufficient.

"To serve as a basis for § 1983 liability, the failure to promulgate municipal policy must amount to 'an intentional choice, not merely an unintentionally negligent oversight.'" *Evans v. City of Marlin,* 986 F.2d 104, 108 (5th Cir.1993) (quoting *Rhyne v. Henderson Cnty.,* 973 F.2d 386, 392 (5th Cir.1992)). Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) "A failure to adopt a policy rises to the level of deliberate indifference 'when it is obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights.'" *Evans,* 986 F.2d at 108 (quoting *Rhyne,* 973 F.2d at 392).

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* —— U.S. ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (internal quotation marks omitted, alteration in original) (quoting *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). To establish that a state actor disregarded a known or obvious consequence of his actions, there must be "actual or constructive notice" "that a particular omission in their training program causes ... employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." *Id.* (citing *Bryan Cnty.,* 520 U.S. at 407, 117 S.Ct. 1382). **"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout**

---

[9] In other portions of the Complaint Plaintiffs admit that the school board had policies that provided for correct interventions, investigations, and services for students with disabilities. (Complaint, ¶ 47).

**notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.**" *Id.* (internal quotation marks omitted). Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard "less stringent" than deliberate indifference would be employed, and "a failure-to-train claim 'would result in *de facto respondeat superior* liability.'" *Id.* (quoting *City of Canton v. Harris,* 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

*Porter*, 659 F.3d at 446–47 (emphasis added).

Here, Plaintiffs do not and cannot allege that the District's policymaker, the School Board, acted with "deliberate indifference" leading to the violation of A.H.'s constitutional rights. Rather, Plaintiffs assert that the District "failed to have policies, procedures, practices and customs in place . . . so as to protect Plaintiffs from a known and inherent dangerous situation." (Complaint, ¶¶ 102-104). However, even accepting these assertions as true, they do not meet Plaintiffs' burden of asserting deliberate indifference.  Even if this were the standard for deliberate indifference, Plaintiffs fail to allege facts that would render these assertions plausible. There are no factual allegations, for example, suggesting that other violations were known to a policymaker and went overlooked. Pleadings that "are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Thus, Plaintiffs' Complaint does not sufficiently allege that the District failed to adopt a policy based on the deliberate indifference of a District policymaker.

In addition to not being able to identify a policymaker and official policy, Plaintiffs cannot meet the third element of a *Monell* claim because they have not stated facts that support a Fourth Amendment violation whose moving force is the policy or custom of the District (Complaint, ¶¶ 92-95). Similarly, Plaintiffs have stated no facts that support a Fourteenth Amendment claim based on equal protection whose moving force is the policy or custom of the District. (Complaint, ¶¶ 96-100).

**E.       Heston Should Be Dismissed as An Individual Plaintiff.**

In their Complaint, Plaintiffs are identified as "Nidia Heston, Natural Mother, Legal Parent And Next Friend of A.H." However, there are no allegations of conduct directed toward Heston. In seeking

damages, paragraph 112 of the Complaint, focuses on damages suffered by A.H. However, paragraph 113 refers to damages suffered by "Plaintiffs." To the extent Heston seeks to bring individual claims for damages suffered on her behalf, they should be dismissed. *See Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 169 (5th Cir. 2016)(motion to dismiss under Rule 12(b)(6) should have been granted as to parents' claims for mental anguish damages based on mistreatment of their disabled son because neither the ADA nor the Rehabilitation Act authorizes such claims); *Hooker v. Dallas Indep. Sch. Dist.*, 3:09-CV-1289-D, 2010 WL 4025877, at *5 (N.D. Tex. Oct. 13, 2010)(parents only have standing to pursue claims under Section 1983 if they assert deprivation of their own constitutional rights).

**F.**     **Claims for Punitive Damages Must be Dismissed.**

In paragraph 113 of their Compliant, Plaintiffs seek to recover punitive damages; however, such damages are not recoverable in this case. *See Barnes v. Gorman*, 536 U.S. 181, 189, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002)(no punitive damages for claims under Section 504); *City of Newport v. Fact Concerts Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L.Ed.2d 616 (1981) (no punitive damages against governmental entities under 1983 claims). Any claim for punitive damages should be dismissed.

WHEREFORE, the District respectfully request that this Court dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and award any additional relief that the Court deems appropriate.

Respectfully submitted,

EICHELBAUM WARDELL
HANSEN POWELL & MEHL, P.C.

By:   Jennifer A. Powell
      Jennifer A. Powell
      State Bar No. 00783554
      Holly B. Wardell
      State Bar No. 00797627
      4201 W. Parmer Lane, Suite A100
      Austin, TX  78727
      jpowell@edlaw.com
      hwardell@edlaw.com

(512) 476-9944
(512) 472-2599

*Counsel for Austin Independent School District*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been sent by court-generated electronic means on March 19, 2018, to the following:

Martin J. Cirkiel
Dominique L. Augustus
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
marty@cirkielaw.com
dominique@cirkielaw.com

Mr. Alonzo Campos
The Law Office of Alonzo Campos
1524 S. IH 35, Suite 200
Austin, Texas
alonzo@acamposlaw.com

Jennifer A. Powell