IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NIDIA HESTON, Natural Mother, Legal Parent And Next Friend of A.H.<br>    PLAINTIFFS<br><br>v.<br><br>THE SCHOOL BOARD OF AUSTIN INDEPENDENT SCHOOL DISTRICT, and JENNIFER HARDISON,<br>    DEFENDANTS. | CIVIL ACTION NO.  <u>1: 18-cv-0018</u> |

## FIRST AMENDED COMPLAINT

**NOW COMES** A.H., by and through his next of friend and mother, Nidia Heston (hereinafter collectively referred to as "Plaintiffs" or more simply by their names) and files this *First Amended Complaint* alleging that the Austin Independent School District (hereinafter referred to as "AISD" or "School District"), and Jennifer Hardison, Individually (and hereinafter collectively referred to as "School District Defendants" or more simply "Defendants") violated the various rights of Plaintiffs as more specifically pled herein. Plaintiffs reserve the right to re-plead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof, Plaintiffs would respectfully show this tribunal the following:

### I. BRIEF INTRODUCTION TO THE CASE

1. A.H. was a student with a disability at all pertinent times during the pendency of this cause. The Austin Independent School District had a duty to provide him staff capable of dealing with his unique and individualized needs, yet failed to do so. Instead the District had a Paraprofessional named Jennifer Hardison, work with A.H. but she was ill-equipped to do so. First, she had previously been charged with assault prior to her employment which was known by AISD staff and never should have been working in the AISD in the first instance, let alone with children with significant and labor-intensive needs. In addition, A.H's mother was already well-aware that Ms. Hardison was not the correct person to work with her son

and complained to staff on numerous occasions about Hardison, requesting a change, but to no avail. It should come as no surprise that Hardison grew especially inpatient on one occasion and threw a garbage pail at A.H.'s face and mouth, causing significant injury to his teeth, face and smile. Subsequently Hardison resigned from her position.

2. In regard to this incident, and the acts and omissions of the District in failing to prevent the incident before it occurred or remedy the effects of the injuries after, Nidia Heston, on behalf of her son brings forth claims against the School District for violations of *Section 504 of the Rehabilitation Act of 1973*, 29 U.S.C. §794a ("Rehabilitation Act" or "Section 504") and the *Americans with Disabilities Act* ("ADA"), 42 U.S.C., §12101, et seq. They also pursue constitutional Claims pursuant to Section 1983 of the Civil Rights Acts of 1964 against AISD and Jennifer Hardison, in her Individual Capacity.

## II.   JURISDICTION

3. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the United States Constitution and laws of the United States of America, including the Rehabilitation Act of 1973, the Americans With Disabilities Act and the federal regulations of both, issued thereunder.

## III.   VENUE

4. Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs claims occurred in the Western District of Texas.

## IV.   PARTIES

5. A.H. lives with his mother, Nidia Heston, in Austin, Texas 78748. They live within the AISD catchment area.

6. The Austin Independent School District is a school district organized under the laws of the State of Texas. At all times pertinent to this case, A.H. was a student at the Austin Independent School District. They have been served and have answered by and through their Counsel of Record, the Honorable Holly Wardell and Jennifer Powell, Attorneys with the

       Law Firm of Eichelbaum, Wardell, Hansen, Powell and Mehhl, P.C., 4201 W. Parmer Lane, Suite A100, Austin, TX 78727.

7. Jennifer Hardison was a paraprofessional at the Austin School District at all pertinent times during the incident that is the basis of this complaint. She is a Defendant in this cause in her individual capacity. At the time of the filing in this cause it was unknown where she lived. Since that time she has been located and lives at 14610 Varrelman Street, Austin, Texas 78725, has been served and has answered "Pro Se.".

## V. STATEMENT OF FACTS

A.    AUSTIN INDEPENDENT SCHOOL DISTRICT ("SCHOOL DISTRICT")

8. The School District is a local educational agency, within the meaning of state and federal law.

9. The School District receives, at least in part, federal funding.

10. As such, it must follow the relevant requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

11. Moreover, it must also follow the requisites of the ADA, 42 U.S.C., §12101, et seq.

12. In addition, it must assure that A.H.'s substantive rights pursuant to the United States Constitution are protected.

13. Lastly, it must assure that A.H.'s procedural rights pursuant to the *Due Process Clause* of the 14th Amendment to the United States Constitution are protected.

14. Furthermore, the District is required to provide A.H., and other students with a disability, what is termed a *Free Appropriate Public Education* ("FAPE") pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794; 34 C.F.R. §104.33.

15. One such element of FAPE under Section 504 is to assure students are educated in an environment free from physical and verbal harassment.

16. The District is also required to provide A.H., a non-hostile educational environment to the same extent as his non-disabled peers, pursuant to the ADA, Section 504, and 1983.

17. In order to assure that A.H. and other students similarly situated have their civil rights protected, the School District is required to hire qualified staff so as to serve the unique and individualized needs of the student.

18. Additionally, the School District is required to assure staff receive relevant training on these topics.

19. Furthermore, to assure that the staff receiving such training adhere to the required precepts, the School District is required to assure that staff who have received such training receive continuing supervision on these and related topics.

20. One such required manner of supervision is to take appropriate action against a staff person who has failed to adhere to and fulfill the duties delineated in all necessary training.

21. During all times relevant to this complaint A.H. was a student, specifically during the 2015-2016 school year, a student at the Clint Small Middle School, which is administered as part of the Austin Independent School District, in Austin, Texas.

B. ABOUT A.H.

22. A.H. was born in 2002.

23. A.H. is a child with Autism, Attention Deficit Hyperactivity Disorder and emotional disorders.

24. A.H. is also identified as having Bipolar Disorder.

25. He has been identified as a Student With A Disability, pursuant to the *Individuals With Disabilities Education Act* ("IDEA"), 20 U.S.C. 1401 et seq. and has been a recipient of Special Education Services accordingly.

26. As a student with disabilities, he often requires assistance by adult authority figures, especially teachers and staff at school.

27. All staff working with A.H. are required to be specifically trained so that when A.H. becomes emotionally unstable at school his physical and emotional safety is assured. Further, the supervision must be provided in a manner free from verbal and physical harassment.

C.   PRIOR EDUCATION HISTORY

28.   A.H. started receiving special education services in preschool.

29.   A.H. intelligence is within the average range, but he struggles with behavioral issues.

30.   A.H. also has a history of Bipolar cycling mood swings and difficulties which appear primarily in the fall and spring, typically lasting 6-8 weeks. During this time, A.H. becomes more irritable and more easily agitated.

31.   A.H. has had paraprofessionals assist him throughout his school career. Ms. Heston has repeatedly expressed her concern with AISD staff members, including Rhonda Cuellar, the initial Autism Unit Case Manager, Natalie Hulsey, the subsequent Austism Unit Case Manager, Dwayne Johnson, the Behavioral Unit Case Manager, and De'Sean Roby, Assistant Principal, that the paraprofessionals providing services to A.H. receive adequate training to meet A.H.'s unique needs.

32.   Ms. Heston has also provided A.H. with outside therapy for counseling and speech therapy. A.H. saw a psychologist, Dr. Lottes, Ph.D, every other week as well as a psychiatrist, Dr. Whitenack, M.D. every 2-3 months.

33.   During the fall of A.H.'s 6th grade school year, 2014-2015, the School District called Ms. Heston multiple times to inform her that A.H. kept attempting to hurt himself while at school.

34.   On or about October 21, 2014, Ms. Heston got a call from the School District to inform her that A.H. attempted to hurt himself at school again.

35.   The next day, Ms. Heston took A.H. to the Youth Empowerment Services Waiver Program administered by Integral Care, the local Mental Health Authority for Travis County.

36.   Ms. Heston picked A.H. from school and took him to the Dell Children's Emergency Room.

37.   On or about October 22, 2014 Ms. Heston had a meeting with then Principal, Amy Taylor, Cuellar, Art Mendez, Counselor, and a Parent Support Specialist. Ms. Heston reported that A.H. had three suicide ideations during the school year and requested an aide for A.H. Ms.

       Heston was told by Dr. Bonita Homer, District Representative, Aides were planned for during the previous school year, thus A.H. could not be provided one until the following year.

38. At a meeting on or about January 23, 2015, Ms. Heston requested a 1:1 paraprofessional for A.H. with adequate training to meet A.H.'s unique needs. AISD told Ms. Heston that Clint Small Middle School had requested an Aide, but an Aide had not yet been identified for A.H.

39. On or about May 29, 2015, also during A.H.'s 6th grade year, A.H. attempted to hurt himself again by wrapping a cord around his neck. Ms. Heston reported it to Ms. Roby, and again requested more supervision and adequate training of the Aide's for A.H.

40. Ms. Heston specifically asked Ms. Roby, to replace A.H's current Aide, Jennifer Hardison, as she "did not feel A.H. was safe with her," or in the least for Hardison to never be left alone with A.H., to no avail.

D.    FACTS RELATING TO THE INCIDENT OF CONCERN

41. A.H. attended seventh grade at Small Middle School for the 2015-2016 school year.

42. Throughout the 2015-2016 school year, Ms. Heston repeatedly requested that A.H. receive more support and assistance to ensure his safety at school.

43. On or about March 11, 2016, A.H. was beaten up in the school restroom, resulting in a black eye. When Ms. Heston came to the school AISD staff would not provide her with information on what happened and she never received a report of the incident.

44. On or about March 24, 2016, Ms. Heston called a meeting with Dr. Lepine, Mr. Johnson, and Ms. Hulsey, to discuss the relationship between Jennifer Hardison and A.H. Ms. Heston specifically requested that Ms. Hardison be removed, but was told by staff there was no one else available to support A.H. As a result, the plan was to help A.H. and Ms. Hardison develop a better relationship. The plan was supposed to be presented to Ms. Hardison, but Ms. Heston has no knowledge if it ever was. The Interim Principal, Dr. Lepine, briefly spoke with staff member Mr. Johnson before leaving the meeting and returning about 30-45

minutes later.

45. Unfortunately, Jennifer Hardison had not been correctly trained and supervised as to A.H.'s disabling conditions.

46. On or about March 30, 2016, A.H. began to act out causing Hardison to become upset.

47. Instead of providing the correct interventions according to School Board Policies and Procedures, training guidelines and professional standards of care for educators, and related to A.H.'s unique and individualized needs, Jennifer Hardison began to physically abuse this poor child for simply being himself by throwing a trash can at him.

48. A.H.'s physical injuries included, a one inch indent on his right cheekbone, a one inch bleeding gash on the right side of his lip, a right central incisor tooth that was chipped in half, and a broken top permanent retainer.

49. At about 8:30 a.m. that morning the school nurse called Ms. Heston and told her she needed to come to the school right away and would not give any more details.

50. When Ms. Heston arrived at the school she was met by Dr. Lepine and Officer Ammerman who originally refused to let her speak with A.H. until she spoke with them. Once Ms. Heston spoke with A.H., she was escorted to Dr. Lepine's office where she was told Ms. Hardison's account and that she would be contacted by a detective as a police report had been made.

51. Ms. Heston then took A.H. to Dell Children's ER. She also took him to an Orthodontist, Dr. Adriana Da Silveira, that afternoon to review damage to his broken tooth and removal of his retainer. Dr. Da Silveria stated she would not redo the retainer, but A.H. would eventually need jaw surgery or a root canal to fix the broken tooth.

52. That afternoon Ms. Heston was contacted by Detective Alex Phillips who requested that she take A.H. to the Center for Child Protection for a forensic interview. Ms. Heston took A.H. to the forensic interview, but A.H. did not want to participate.

53. Jennifer Hardison resigned from her position and faced criminal charges. At the time, Ms.

Heston was not aware that Jennifer Hardison had been previously charged with assault prior to her employment at AISD.

E.  FACTS AFTER THE INCIDENT

54. On or about April 4, 2016, A.H. was laying on the couch and could not keep his eyes open. A.H. complained of severe nausea and not feeling well to his family. A.H. laid on the floor and passed out. The family took A.H. to Seton SW Emergency Room. A high fever was reported by the Seton ER Staff, and as a result A.H. was kept overnight. Ms. Heston told Seton ER staff that A.H. was hurt on March 30, 2016, and suspected he was having concussion symptoms.

55. On or about April 8, 2016, Ms. Heston had an informal meeting with Dr. Lepine and Karim Pierce, Educational Advocate for the Capital area, to discuss A.H.'s plan to return to school. Dr. Lepine stated to Ms. Heston when she stepped out of a meeting on March 24, 2016, she recommended to Mr. Johnson to remove Ms. Hardison from A.H.'s care. She further stated she was surprised to find that the committee decided on a different option when she returned to the ARD meeting.

56. After the incident in question, A.H. slept a lot, withdrew from people, stopped eating for 6 weeks and lost 15 pounds, and would not leave his room. A.H. no longer liked to smile and covered his face due to the broken tooth and his teeth shifting from the incident.

57. On or about April 13, 2016, Ms. Heston took A.H. to the Center for Child Protection for a forensic interview that lasted about an hour. Ms. Heston repeatedly asked for a copy of the statement from AISD, Austin Police Department, and Clint Small Middle School, to no avail.

58. On April 29, 2016, A.H. was evaluated for a trauma screening by Dr. Whitenack at Specialty Clinic of Austin.

59. A.H. became afraid to attend school due to the physical assault by Jennifer Hardison.

F.  THE FAILURES OF THE SCHOOL DISTRICT

60. A.H as a student with a disability has all the protections of a student with a disability

pursuant to Section of the Rehabilitation Act of 1973, pursuant to jurisprudence on the subject; federal law, rules and caselaw; OCR guidelines, state law and school board policies and procedures.

61. To Petitioner's knowledge, the School District never conducted or completed an investigation into the matter pursuant to school board policies and procedures predicated upon Section 504.

62. The School District failed to provide petitioners a written investigation of the incident pursuant to school board policies and procedures predicated upon Section 504.

63. The School District failed to provide the family notice of their procedural rights, as set forth by the regulations promulgated under the School Board Policies and Procedures predicated upon Section 504.

64. The School District failed to provide the family information about who the Section 504 Coordinator was for the District or A.H.'s rights under Section 504.

65. The School District failed to hire qualified staff for A.H. pursuant to their duties under Section 504.

66. The School District failed to hire competent staff. To School District failed to train sufficiently staff.

67. The School District failed to supervise staff. The School District failed to remove Hardison from A.H.'s care once mother complained about her poor care and temperament with A.H.

68. The School District failed to provide petitioner information regarding their right to file a formal grievance with the School District.

69. The School District failed to provide petitioner information regarding their right to file a formal complaint with the Texas Education Agency.

70. The School District failed to provide the family information regarding their right to file a formal complaint with the Office of Civil Rights in a timely manner.

71. The School District failed to convene a meeting to address the physical assault.

72. The School District failed to provide any of the remedies required under jurisprudence related to abuse of children with disabilities including the School Board's own policies and procedures including but not limited to providing:

    a. a psychological assessment;
    b. school-based counseling services;
    c. an aide or shadow to observe the Student at the school; or
    d. social skills training.

73. The school failed to address the impact of the physical assault on A.H. both in terms of medical needs as well as emotional needs.

## VII. PROCEDURAL RESUME

74. The *Individuals With Disabilities Education Act* at 20 U.S.C. 1415(l) generally (but not always) requires a student receiving Special Education services, like A.H. to go through what is termed *Administrative Exhaustion* before the Student may file a claim in federal court, pursuant to other civil rights laws, like Section 504 and/or the ADA.

75. On or about August 15, 2016 Mrs. Heston filed a *Request For A Due Process Hearing* with the Texas Education Agency ("TEA") to address her son's then current educational needs and the potential need to exhaust other concerns, before bringing a lawsuit in federal court. In recognition of that probability, on or about November 3, 2016 Plaintiffs filed an *Amended Petition* adding claims related to Section 504 and the ADA.

76. Shortly thereafter the School District, by and through their current Counsel, Holly Wardell with her law firm noted above, filed a *Response To The Amended Complaint, Plea To The Jurisdiction and Motion To Strike*. In regard to the *Plea To The Jurisdiction* Counsel for AISD wrote, among other things that:

   "To the extent Petitioner asserts claims pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, the Hearing Officer does not have jurisdiction over such claims. *See, e.g., Hardin-Jefferson Indep. Sch. Dist.*, Dkt No. 200-SE-0315 (July 31, 2015). All non-IDEA claims must be dismissed. "

In due order the Special Education Hearing Officer dismissed all non-IDEA claims, like Section 504 and the ADA, that she did not have the jurisdictional authority to address.

77. IDEA strongly encourages the family and school district to seek alternative dispute resolution as opposed to litigation, in recognizing the high cost of that a *Due Process Hearing* has financially on both parties and educationally upon the child. *See* 71 Fed. Reg. 46,701 (2006). In fact, IDEA does more than just encourage, it requires the parties to meet in what is termed a *Resolution Session* within 10 days after a complaint is filed with the Texas Education Agency. 20 U.S.C. §1415 (f)(1)(B); 34 C.F.R. §300.510. The parties did so in this case, but were not able to yet resolve their differences.

78. IDEA also requires each state to offer "no-cost" mediation to help settle disputes. This process is voluntary but once entered into, is confidential. Any agreement is enforceable in state or federal court. 20 U.S.C. §1415 (e); 34 C.F.R. §300.506. The parties did so in this case and were able to resolve their differences. As noted by the AISD in their *Motion To Dismiss* [DE# 8] it states in relevant part, the following:

> C.2. Claimants reserve the right to file federal, state, and local claims against the District that are not identified in C.I., including claims that have arisen under Texas Education Code §22.0511, including the right to exhaust the pending local grievance filed pursuant to District policy FNG (LOCAL), and claims pursuant to 42 U.S.C. Section 1983, Section 504 of the 1973 Rehabilitation Act (as amended) and its regulations, and the Americans with Disabilities Act (as amended) and its regulations. Also reserved is any requirement to file a complaint with TEA pursuant Education Code 22.0511. The Parents agree to dispose of all disputes related to the appropriateness of educational services and resources for Student, but the Parents are reserving their right to pursue personal injury claims related to an alleged incident involving a prior District employee, Jennifer Hardison, that occurred on March 30, 2016, at Small Middle School.

79. In return and as part of the consideration for the agreement, and among other things, the Claimant released the District from any liability under IDEA, and the federal and state regulations promulgated thereunder.

80. Shortly thereafter the Hearing Officer signed a dismissal order regarding all the claims related to the IDEA, brought forward in Plaintiffs complaint filed with the TEA, leaving Plaintiffs free to file this case under Section 504 and the ADA.

## VII. STATE ACTION

81. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth. In addition, each portion below likewise will incorporate by reference any such allegation above it, also as though set forth at length therein.

82. The School District was at all times and in all matters acting under color of federal and state law in regard to the acts and omissions alleged by Petitioner.

83. The School District was at all times and in all matters receiving federal funds during the period in question.

## VIII. UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES & CUSTOMS

84. Plaintiffs incorporate by reference all the above related paragraphs above with the same force and effect as if herein set forth.

85. Plaintiffs contend that the various failures noted above, are due to the fact the School District failed to have policies, procedures, practices and customs in place to assure staff was correctly hired, so as to protect Plaintiffs from a known and inherent dangerous situation, violating the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seeks recovery pursuant to 42 U.S.C. §1983.

86. Plaintiffs contend that the various failures noted above, are due to the fact the School District failed to have policies, procedures, practices and customs in place to assure staff was correctly trained, so as to protect Plaintiffs from a known and inherent dangerous situation, violating the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seeks recovery pursuant to 42 U.S.C. §1983.

87. Plaintiffs contend that the various failures noted above, are due to the fact the School District failed to have policies, procedures, practices and customs in place to assure staff was correctly supervised, so as to protect Plaintiffs from a known and inherent dangerous situation, violating the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seeks recovery pursuant to 42 U.S.C. §1983.

88. Based upon the operative facts, such acts and omissions rise to the level of deliberate indifference, constituting a violation of the Constitution of the United States, and for which Plaintiffs seeks recovery pursuant to 42 U.S.C. §1983.

### IX. CLAIMS AGAINST THE DISTRICT PURSUANT TO THE 4TH AMENDMENT

89. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

90. Plaintiffs contend that the acts and omissions of the School District, together violated the rights of A.H. pursuant to the Fourth Amendment of the Constitution of the United States for which he seeks recovery pursuant to 42 U.S.C. §1983.

91. Additionally, Plaintiffs contend that the acts and omissions of Defendant Jennifer Hardison, together violated the rights of A.H. pursuant to the Fourth Amendment of the Constitution of the United States for which he seeks recovery pursuant to 42 U.S.C. §1983.

92. The acts and omissions of these Defendants injured A.H. thereby.

### X. CLAIMS AGAINST THE DISTRICT PURSUANT TO THE 14TH AMENDMENT

93. In addition and in the alternative to the above, the facts as previously described demonstrate violations of the A.H.'s civil rights pursuant to the *Due Process Clause* of the 14th Amendment to the United States Constitution.

94. Moreover, and also in addition and in the alternative to the above, the facts as previously described demonstrate violations of A.H.'s civil rights by Jennifer Hardison pursuant to the *Due Process Clause* of the 14th Amendment to the United States Constitution.

95. As noted above, A.H. was a student with a severe and pervasive disabilities. While a student with the School District, he was physically abused over the course of time by his Aide, Jennifer Hardison, violating A.H.'s liberty and private interest thereby.

96. In addition and in the alternative, the School District singularly discriminated against A.H. by failing to keep him safe as compared to his non-disabled peers, thereby violating the *Equal Protection Clause* of the Fourteenth Amendment, for which the School District is

likewise liable to him pursuant to 42 U.S.C. §1983.

97. Such acts, omissions and failures by the School District caused injuries to A.H..

## XI. CLAIMS PURSUANT TO SECTION 504 OF THE REHABILITATION ACT

98. Plaintiffs incorporate and re-allege the above-referenced allegations, as though set forth at length herein. In addition, each portion below likewise will incorporate by reference any such allegation above it, also as though set forth at length therein.

99. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled students unique and individualized needs, and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

100. The facts as previously described demonstrate violations of Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

101. A.H. is a qualified individual with a disability in the United States, as defined in 29 U.S.C. § 705(20).

102. The School District receives federal financial assistance, as defined by 29 U.S.C. §794 and as such, may not discriminate against a person because of their disability.

103. Plaintiffs assert that because the School District failed to keep A.H. safe from harm, and failed to provide him an environment that was not hostile, such failures as noted above, have, together and separately, contributed to violating his rights under Section 504, federal rules and regulations promulgated pursuant thereto, by not keeping him as safe as his non-disabled peers.

104. As such, A.H. has a private cause of action for the violation of Section 504 regulations.

105. Furthermore, and likewise in addition and in the alternative, the acts and the omissions of the

School District rose to the level of a gross deviation of professional standards of care.

106. Such acts, omissions and failures by the School District caused injuries to A.H.

## XII.   CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT

107. In addition and in the alternative to the above, the facts as previously described demonstrate violations of the Americans with Disabilities Act, 42 U.S.C. §12131, *et seq*.

108. Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

109. The School District is a "public entity" as defined in 42 U.S.C. §12131(1), and receives federal financial assistance so as to be covered by the mandate of the ADA.

110. The School District and its schools are facilities and their operation constitutes a program and services for ADA purposes.

111. Specifically, and separate and apart from his Section 504 causes of action, A.H. alleges that the School District failed and refused to reasonably accommodate and modify its programs and services, so as to provide him educational services to the same extent as his non-disabled peers.

112. Such acts, omissions and failures by the School District caused injuries to A.H.

## XIII.   ADMINISTRATIVE EXHAUSTION

113. As noted above, the parties have executed a *Mediated Settlement Agreement* noting their mutual agreement that all of the child's claims related to IDEA had been addressed and the disagreement settled.  As such, there was no further necessity to litigate the case and by extension, no need to waste valuable taxpayer time and money to go through the exhaustion process.

## XIV.   PROXIMATE CAUSE

114. Plaintiffs incorporate by reference all allegations the above related paragraphs with the same force and effect as if herein set forth.

115. Each and every, all and singular of the foregoing acts and omissions, on the part of the Independent School District, taken separately and/or collectively, jointly and severally,

constitute a direct and proximate cause of the injuries and damages set forth herein.

## XV.  RATIFICATION

116. Plaintiffs incorporate by reference all allegations the above related paragraphs with the same force and effect as if herein set forth.

117. The School District ratified the acts, omissions and customs of all school administrators, educators, personnel and staff.

118. As a result the School District is responsible for the acts and omissions of all school administrators, educators, personnel and staff.

## XVI.  DAMAGES

119. Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

120. As a direct and proximate result of the Defendants conduct, A.H. has suffered injuries and damages, which he may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to the following:

   a. A deprivation of educational opportunities in th past and future;
   b. Physical impairment in the past;
   c. Physical impairment in the future;
   d. Physical pain in the past and future;
   e. Reasonable medical care and expenses in the past;
   f. Reasonable medical care and expenses in the future;
   g. Mental anguish in the past;
   h. Mental anguish in the future; and
   i. Various out-of-pocket expenses incurred by his family but for the acts and omissions of the School Board.

121. By reason of the above, the subject of this lawsuit, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.  Moreover, the District and Defendant Hardison are liable to A.H. for punitive damages.

## XVII. ATTORNEY FEES

122. Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth.

123. It was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs under 29 U.S.C. §794a, as well as pursuant to the ADA, 42 U.S.C. § 2000d *et seq*., Sections 1981, 1983 and 1988.

## XVIII. DEMAND FOR JURY TRIAL

124. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against the Independent School District and Jennifer Hardison, jointly and severally, in the manner and particulars noted above, and in an amount sufficient to fully compensate A.H. for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Section 504, the ADA, 42 U.S.C. § 2000d *et seq*., and 42 U.S.C. § 1981, 1983 and 1988, together with pre- and post-judgment interest, and court costs expended herein, and for such other relief as this Court in equity, deems just and proper.

Respectfully submitted,

Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
State Bar No. 00783829
marty@cirkielaw.com [Email]

Dominique L. Augustus, Esq.
State Bar No. 24105450
dominique@cirkielaw.com [Email]

Mr. Alonzo Campos, Attorney
The Law Office Of Alonzo Campos

1524 South Interstate 35, Suite 200
Austin, Texas
(512) 554-5976 [Telephone]
(512) 532-6810 [Facsimile]
alonzo@acamposlaw.com [Email]

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 29th day of March 2018, I electronically filed the foregoing documents with the Clerk of Court using the CM/ECF system and notice was electronically provided to the following CM/ECF system participant served Ms. Hardiston by regular US mail:

Ms. Holly Boyd Wardell, Attorney
State Bar Number: 00797627
Ms. Jennifer Powell, Attorney
State Bar Number: 00783554
Eichelbaum Wardell Hansen Powell and Mehl, P.C.
4201 W. Parmer Lane, Suite 100
Austin, Texas 78727
(512) 476-9944 (Telephone)
(512) 472-2599 (Facsimile)
Attorneys for Defendant AISD

Ms. Jennifer Hardison
14610 Varrelman Street
Austin, Texas 78725,
*Pro Se*
VIA REGULAR US MAIL

                                                */s/ Martin J. Cirkiel*
                                                Martin J. Cirkiel