**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **NIDIA HESTON and ADRIAN** | § | |
| **HESTON IV, Natural Parents and** | § | |
| **Next Friends of A.H.** | § | |
| **PLAINTIFFS** | § | **CIVIL ACTION NO.  1: 18-cv-0018** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **THE SCHOOL BOARD OF AUSTIN** | § | |
| **INDEPENDENT SCHOOL DISTRICT,** | § | |
| **and JENNIFER HARDISON,** | § | |
| **DEFENDANTS.** | § | |

**SECOND AMENDED COMPLAINT**

**NOW COMES** A.H., by and through his next friends and natural parents, Nidia Heston and

Adrian Heston IV (hereinafter collectively referred to as "Plaintiffs" or more simply by their names)

and files this *Second Amended Complaint* alleging that the Austin Independent School District

(hereinafter referred to as "AISD"or "School District"), and Jennifer Hardison, Individually (and

hereinafter collectively referred to as "School District Defendants" or more simply "Defendants")

violated the various rights of Plaintiffs as more specifically pled herein. Plaintiffs reserve the right

to re-plead if new claims and issues arise upon further development of the facts, as permitted by law.

In support thereof, Plaintiffs would respectfully show this tribunal the following:

**I.  BRIEF INTRODUCTION TO THE CASE**

1.        A.H. was a student with a disability at all pertinent times during the pendency of this cause.

The Austin Independent School District had a duty to provide him a number of *Reasonable*

*Accommodations* at school so that he could enjoy the benefit of the public services, to the

same extent as his non-disabled peers. Sadly, they failed to do so, leading to his injury at the

hands of a staff member, Defendant Hardison. The fact that Hardison abused A.H. should

come as no surprise, as she had a history of abusing children.  Moreover, A.H.'s parents

complained on numerous occasions to AISD Staff about Hardison, but did nothing in regard

to their complaints.

2.    In regard to this incident itself, and the acts and omissions of the District in failing to prevent the incident before it occurred or remedy the effects of the injuries after, Nidia Heston and Adrian Heston IV, on behalf of their son, brings forth claims against the School District for violations of *Section 504 of the Rehabilitation Act of 1973*, 29 U.S.C. §794a ("Rehabilitation Act" or "Section 504") and the *Americans with Disabilities Act* ("ADA"), 42 U.S.C., §12101, et seq. They also pursue constitutional Claims pursuant to Section 1983 of the Civil Rights Acts of 1964 against AISD and Jennifer Hardison, in her Individual Capacity.

## II.  <u>JURISDICTION</u>

3.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the United States Constitution and laws of the United States of America, including the Rehabilitation Act of 1973, the Americans With Disabilities Act and the federal regulations of both, issued thereunder.

## III.  <u>ADMINISTRATIVE EXHAUSTION</u>

4.    As will be more completely discussed below, Plaintiffs previously sought to have claims that the District failed to provide A.H., what is termed a *Free Appropriate Public Education* ("FAPE"), pursuant to *Individuals With Disabilities Education Act* ("IDEA"), 20 U.S.C. §1401(9), heard by a Special Education Hearing Officer.

5.    This hearing is initiated by the filing of what is termed a *Request For A Due Process Hearing* with the Texas Education Agency ("TEA"). *See* 20 U.S.C. §1415( c)(2).

6.    In this situation the request had two purposes. One is for the child to address the School District's failures as contemplated by IDEA.  The other is to first go through what is termed *Administrative Exhaustion*, so that A.H. would be free to file claims in federal court pursuant to Section 504 and the ADA.

7.    As noted below, the parties have executed a *Mediated Settlement Agreement* noting their mutual agreement that all of the child's claims related to IDEA had been addressed.  Further, they agreed that A.H. could bring forth claims in federal court on Section 504 and ADA

causes of action.

8.   A.H. now does so.

## IV.  VENUE

9.   Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs claims occurred in the Western District of Texas.

## V.  PARTIES

10.   A.H. lives with his parents, Nidia Heston and Adrian Heston IV, in Austin, Texas 78748. They live within the AISD catchment  area.

11.   The Austin Independent School District is a school district organized under the laws of the State of Texas. At all times pertinent to this case, A.H. was a student at the Austin Independent School District. They have been served and have answered by and through their Counsel of Record, the Honorable Holly Wardell and Jennifer Powell, Attorneys with the Law Firm of Eichelbaum, Wardell, Hansen, Powell and Mehhl, P.C., 4201 W. Parmer Lane, Suite A100, Austin, TX 78727.

12.   Jennifer Hardison was a paraprofessional at the Austin School District at all pertinent times during the incident that is the basis of this complaint. She is a Defendant in this cause in her individual capacity. At the time of the filing in this cause it was unknown where she lived. Since that time she has been located and lives at 14610 Varrelman Street, Austin, Texas 78725, has been served and has answered "Pro Se."

## V.  STATEMENT OF FACTS

A.   ABOUT A.H.

13.   A.H. was born in 2002.

14.   A.H. is a child with Autism, Attention Deficit Hyperactivity Disorder and emotional disorders.  A.H. is also identified as having Bipolar Disorder.

15.   These disabilities, both alone and in concert with each other, cause A.H. to have significant emotional problems at home and in the community.

16. His family is loving and patient, and now well-trained in dealing with his disabling conditions. In disability nomenclature, this additional supervision, and with persons who are well-trained in his individual needs, is considered a *Reasonable Accommodation* for him.

17. In order to accommodate A.H.'s multiple disabling conditions, his parents assure that A.H. receives outside therapy for speech therapy.

18. In addition, A.H. sees a psychologist, Dr. Lottes, Ph.D, every other week.

19. He also visits his psychiatrist,  Dr. Whitenack, M.D. approximately every 2-3 months.

20. As such, he receives medication as an additional accommodation to help him at home and in the community

21. Further, the support services and accommodations provided A.H., wherever he might need them, and as provided by any person with him, must be done so in a manner free from verbal and physical harassment and abuse.

B.   AUSTIN INDEPENDENT SCHOOL DISTRICT ("SCHOOL DISTRICT")

22. The School District is a local educational agency, within the meaning of state and federal law.

23. The School District receives, at least in part, federal funding.

24. As such, it must follow the relevant requisites of  Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

25. Moreover, it must also  follow the requisites of the ADA, 42 U.S.C., §12101, et seq.

26. In addition, it must assure that A.H.'s substantive rights pursuant to the United States Constitution are protected.

27. Lastly, it must assure that A.H.'s procedural rights pursuant to the *Due Process Clause* and *Equal Protection Clause* of the 14th Amendment to the United States Constitution are both protected.

28. The District is required to accommodate A.H. in such a manner that he benefits from a non-hostile educational environment to the same extent as his non-disabled peers, whether

pursuant to the ADA, Section 504 or both.

29.    In order to assure that A.H. has his civil rights protected, the School District is required to hire qualified staff so as to serve the unique and individualized needs of the student.

30.    Such qualified staff act as a *Reasonable Accommodation* for A.H. as contemplated by Section 504, the ADA or both.

31.    Additionally, the School District is required to assure staff receive relevant training on these topics.

32.    Such training of staff also act as a *Reasonable Accommodation* for A.H. as contemplated by Section 504, the ADA or both.

33.    Furthermore,  to assure that the staff receiving such training adhere to the required precepts, the School District is required to assure that staff who have received such training receive continuing supervision on these and related topics.

34.    Such supervision of staff also act as a *Reasonable Accommodation* for A.H. as contemplated by Section 504, the ADA or both.

35.    One such required manner of supervision is to take appropriate action against a staff person who has failed to adhere to and fulfill the duties delineated in all necessary training.

36.    The need for timely and appropriate action with staff, also acts as a *Reasonable Accommodation* for A.H. as contemplated by Section 504, the ADA or both.

C.    AUSTIN INDEPENDENT SCHOOL DISTRICT POLICIES AND PROCEDURES

37.    The Austin Independent School District has long had and re-authorized policies and procedures related to *Student Welfare* and keeping students free from Discrimination, Harassment & Retaliation, that address among other things, including bullying, harassment assault.

38.    It sets out definitions of bullying and harassment, information about reporting allegations of bullying and harassment whether it be student upon student or teacher upon student, and their own investigatory procedures.

39. It requires that when a student with a disability is a victim of bullying and harassment a complaint be directed to the School District's Section 504 Coordinator, and the family be given that person's contact information.

40. The family also was required to receive actual notice of their procedural rights.  The school district's investigation needed to be completed in a timely manner, usually less than 10 days, that a written report should be developed and interim action taken, as appropriate.

41. The report must address whether or not prohibited contact occurred and must be filed with the relevant School District Official.

42. If a student is not satisfied with the outcome of the investigation, they have the right to appeal the decision through the District's grievance procedure or even with the Office of Civil Rights with the U.S. Department of Education.

43. The School Board Policies also note a non-exhaustive list of potential corrective actions. They include a training program for the victim and perpetrators, a comprehensive education program for the school community and counseling to the victim and perpetrators(s). Importantly, there needed to be a system in place to follow-up and determine if new incidents had occurred and the effectiveness of those provided. There is also discussion of increasing staff monitoring and assessment of the problem.

D   PRIOR EDUCATION HISTORY

44. During all times relevant to this complaint A.H. was a student, specifically during the 2015-2016 school year, a student at the Clint Small Middle School, which is administered as part of the Austin Independent School District, in Austin, Texas.

45. As a student with significant disabilities, A.H. started receiving *Reasonable Accommodations* in the educational environment, early on.

46. The main accommodation A.H. received is called Special Education services.

47. A.H.'s intelligence is within the average range, but as noted above, he struggles with emotional and behavioral issues at school.

48.   A.H. also has a history of Bipolar cycling mood swings and difficulties which appear primarily in the fall and spring, typically lasting 6-8 weeks. During this time, A.H. becomes more irritable and more easily agitated.

49.   A.H. has had paraprofessionals assist him throughout his school career.

50.   Yet during the 2015-2016 School Year, Ms. Heston repeatedly expressed her concern with AISD staff members that her son be provided his necessary accommodations by persons who are adequately trained.

51.   She made such complaints to Rhonda Cuellar, the initial Autism Unit Case Manager, Natalie Hulsey and the subsequent Autism Unit Case Manager.

52.   She also has addressed such concerns to Dwayne Johnson, the Behavioral Unit Case Manager and De'Sean Roby, the Assistant Principal.

53.   During the fall of A.H.'s 6th grade school year, 2014-2015, the School District called Ms. Heston multiple times to inform her that A.H. was attempting to hurt himself while at school.

54.   On or about October 21, 2014, Ms. Heston got a call from the School District to inform her that A.H. attempted to hurt himself at school again.

55.   The next day, Ms. Heston took A.H. to the Youth Empowerment Services Waiver Program administered by Integral Care, the local Mental Health Authority for Travis County.

56.   Ms. Heston also him to the Dell Children's Emergency Room.

57.   On or about October 22, 2014 Ms. Heston had a meeting with then Principal, Amy Taylor, Cuellar, Art Mendez, Counselor, and a Parent Support Specialist.

58.   Ms. Heston reported that A.H. had three suicide ideations during the school year and she requested an aide, as an additional accommodation and support for A.H.

59.   Ms. Heston was told by Dr. Bonita Homer, District Representative, Aides that A.H. could not be provided one until the following year.

60.   At a meeting on or about January 23, 2015, Ms. Heston again requested a 1:1 paraprofessional for A.H. with adequate training to accommodate A.H.'s unique needs.

61.     AISD told Ms. Heston that Clint Small Middle School had requested an Aide, but an Aide had not yet been identified for A.H.

62.     On or about May 29, 2015, also during A.H.'s 6th grade year, A.H. attempted to hurt himself again by wrapping a cord around his neck. Ms. Heston reported it to Ms. Roby, and again requested more supervision and adequate training of the Aide's for A.H.

63.     Ms. Heston specifically asked Ms. Roby, to replace A.H's current Aide, Jennifer Hardison, as she "did not feel A.H. was safe with her."  She also asked that Hardison should never be left alone with A.H.   AISD Staff failed to respond to mother's requests.

E.      FACTS RELATING TO THE ABUSE OF A.H.

64.     A.H. attended seventh grade at Small Middle School for the 2015-2016 school year.

65.     Throughout the 2015-2016 school year, Ms. Heston repeatedly requested that A.H. receive more support and assistance to ensure his safety at school.

66.     On or about March 11, 2016, A.H. was beaten up in the school restroom, resulting in a black eye. When Ms. Heston came to the school AISD staff would not provide her with information on what happened.

67.     In fact, the School District has policies and procedures in place that require the District's Section 504 Coordinator to investigate allegations that a child with a disability was a victim of harassment or assault but failed to do so.

68.     Nevertheless, District Staff failed to let the District's Section 504 Coordinator know of such assaults.

69.     As such, mother never received notice of her Procedural Safeguards, pursuant to Section 504 Jurisprudence and School Board Policies and Procedures.

70.     On or about March 24, 2016, Ms. Heston called a meeting with Dr. Lepine, Mr. Johnson, and Ms. Hulsey, to discuss the relationship between Jennifer Hardison and A.H.

71.     Ms. Heston specifically complained about Ms. Hardison and asked she be removed. Nevertheless, she was told by staff there was no one else available to support A.H.

72.   Unfortunately, Jennifer Hardison had never been correctly trained as to how to accommodate A.H.'s disabling conditions.

73.   Nor was Hardison correctly supervised by other staff as to how to accommodate A.H.'s disabling conditions.

74.   On or about March 30, 2016, A.H. began to act out.  Apparently Hardison became upset.

75.   Instead of providing the correct accommodations to A.H. Jennifer Hardison physically and verbally abused the child.

76.   In fact, she threw a trash can at him hitting him in the face.

77.   A.H.'s physical injuries included, a one inch indent on his right cheekbone, a one inch bleeding gash on the right side of his lip, a  right central incisor tooth that was chipped in half, and a broken top permanent retainer.

78.   At about 8:30 a.m. that morning the school nurse called Ms. Heston and told her she needed to come to the school right away and would not give any more details.

79.   When Ms. Heston arrived at the school she was met by Dr. Lepine and Officer Ammerman who originally refused to let her speak with A.H. until she spoke with them.

80.   Once Ms. Heston spoke with A.H., she was escorted to Dr. Lepine's office where she was told Ms. Hardison's account and that she would be contacted by a detective as a police report had been made.

81.   Ms. Heston then took A.H. to Dell Children's ER. She also took him to an Orthodontist , Dr. Adriana Da Silveira, that afternoon to review damage to his broken tooth and removal of his retainer.

82.   Dr. Da Silveria stated she would not redo the retainer, but A.H. would eventually need jaw surgery or a root canal to fix the broken tooth.

83.   That afternoon Ms. Heston was contacted by Detective Alex Phillips who requested that she take A.H. to the Center for Child Protection for a forensic interview. Ms. Heston took A.H. to the forensic interview, but A.H. did not want to participate.

84.   Jennifer Hardison resigned from her position and faced criminal charges. At the time, Ms. Heston was not aware that Jennifer Hardison had been previously charged with assault prior to her employment at AISD.

F.   FACTS AFTER THE INCIDENT

85.   On or about April 4, 2016, A.H. was laying on the couch and could not keep his eyes open. A.H. complained of severe nausea and not feeling well to his family. A.H. laid on the floor and passed out. The family took A.H. to Seton SW Emergency Room. A high fever was reported by the Seton ER Staff, and as a result A.H. was kept overnight. Ms. Heston told Seton ER staff that A.H. was hurt on March 30, 2016, and suspected he was having concussion symptoms.

86.   After the incident in question, A.H. slept a lot, withdrew from people, stopped eating for 6 weeks and lost 15 pounds, and would not leave his room.

87.   A.H. no longer liked to smile and covered his face due to the broken tooth and his teeth shifting from the incident.

88.   On or about April 13, 2016, Ms. Heston took A.H. to the Center for Child Protection for a forensic interview that lasted about an hour. Ms. Heston repeatedly asked for a copy of the statement from AISD, Austin Police Department, and Clint Small Middle School, to no avail.

89.   On April 29, 2016, A.H. was evaluated for a trauma screening by Dr. Whitenack at Specialty Clinic of Austin.

90.   A.H. became afraid to attend school due to the physical assault by Jennifer Hardison.

G.   THE FAILURES OF THE SCHOOL DISTRICT

91.   A.H as a student with a disability has all the protections of a student with a disability pursuant to Section of the Rehabilitation Act of 1973, pursuant to jurisprudence on the subject; federal law, rules and case law; OCR guidelines, state law and school board policies and procedures.

92.   As noted above, A.H.'s parents never received notice of their procedural safeguards as

required by Section 504.

93.    To Plaintiff's knowledge, the School District never conducted or completed an investigation into the matter pursuant to school board policies and procedures predicated upon Section 504.

94.    The School District failed to provide Plaintiff's a written investigation of the incident pursuant to school board policies and procedures predicated upon Section 504.

95.    The School District failed to provide the family notice of their procedural rights, as set forth by the regulations promulgated under the School Board Policies and Procedures predicated upon Section 504.

96.    The School District failed to provide the family information about who the Section 504 Coordinator was for the District or A.H.'s rights under Section 504.

97.    The School District failed to hire qualified staff for A.H. pursuant to their duties under Section 504.

98.    The School District failed to hire competent staff. To School District failed to train sufficiently staff.

99.    The School District failed to supervise staff. The School District failed to remove Hardison from A.H.'s care once mother complained about her poor care and temperament with A.H.

100.   The School District failed to provide the family with information regarding their right to file a formal grievance with the School District.

101.   The School District failed to provide the family with information regarding their right to file a formal complaint with the Texas Education Agency.

102.   The School District failed to  provide the family information regarding their right to file a formal complaint with the Office of Civil Rights in a timely manner.

103.   The School District failed to convene a meeting to address the physical assault.

104.   The School District failed to provide any of the remedies required under jurisprudence related to abuse of children with disabilities including the School Board's own policies and

procedures.

105.    The school failed to address the impact of the physical assault on A.H. both in terms of medical needs as well as emotional needs.

### VII.  PROCEDURAL RESUME

106.    The *Individuals With Disabilities Education Act* at 20 U.S.C. 1415(l) generally (but not always) requires a student receiving Special Education services, like A.H. to go through what is termed *Administrative Exhaustion* before the Student may file a claim in federal court, pursuant to other civil rights laws, like Section 504 and/or the ADA.

107.    On or about August 15, 2016 Mrs. Heston filed a *Request For A Due Process Hearing* with the Texas Education Agency ("TEA") to address her son's then current educational needs and the potential need to exhaust other concerns, before bringing a lawsuit in federal court

108.    In recognition of that probability, on or about November 3, 2016 Plaintiffs filed an *Amended Petition* adding claims related to Section 504 and the ADA.

109.    Shortly thereafter the School District, by and through their current Counsel, Holly Wardell filed a *Response To The Amended Complaint, Plea To The Jurisdiction and Motion To Strike*.  In regard to the *Plea To The Jurisdiction* Counsel for AISD wrote, among other things that:

> "To the extent Petitioner asserts claims pursuant to Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, the Hearing Officer does not have jurisdiction over such claims. *See, e.g., Hardin-Jefferson Indep. Sch. Dist*., Dkt No. 200-SE-0315 (July 31, 2015). All non-IDEA claims must be dismissed. "

In due order the Special Education Hearing Officer dismissed all non-IDEA claims, like Section 504 and the ADA, that she did not have the jurisdictional authority to address.

110.    IDEA strongly encourages the family and a school district to seek alternative dispute resolution as opposed to litigation, in recognizing the high cost of that a *Due Process Hearing* has financially on both parties and educationally upon the child. *See* 71 Fed. Reg. 46,701 (2006).

111.    In fact, IDEA does more than just encourage settlement, it requires the parties to meet in

what is termed a *Resolution Session* within 10 days after a complaint is filed with the Texas Education Agency. 20 U.S.C. §1415 (f)(1)(B); 34 C.F.R. §300.510 in order to obviate the need for exhaustion. The parties did so in this case, but were not able to yet resolve their differences at that session.

112.   IDEA also requires each state to offer "no-cost" mediation to help settle disputes. This process is voluntary but once entered into, is confidential. Any agreement is enforceable in state or federal court. 20 U.S.C. §1415 (e); 34 C.F.R. §300.506. The parties did so in this case.

113.   First, all claims related to the provision of special education services to A.H. were addressed in the settlement agreement.

114.   Second, Defendants agreed that A.H. could now bring claims related to his injuries, in federal court. As noted by the AISD in their *Amended Motion To Dismiss* [DE# 13, p. 3] it states in relevant part, the following:

C.2. Claimants reserve the right to file federal, state, and local claims against the District that are not identified in C.1., including claims that have arisen under Texas Education Code §22.0511, including the right to exhaust the pending local grievance filed pursuant to District policy FNG (LOCAL), and claims pursuant to 42 U.S.C. Section 1983, Section 504 of the 1973 Rehabilitation Act (as amended) and its regulations, and the Americans with Disabilities Act (as amended) and its regulations. Also reserved is any requirement to file a complaint with TEA pursuant Education Code 22.0511. The Parents agree to dispose of all disputes related to the appropriateness of educational services and resources for Student, but the Parents are reserving their right to pursue personal injury claims related to an alleged incident involving a prior District employee, Jennifer Hardison, that occurred on March 30, 2016, at Small Middle School.

115.   In return and as part of the consideration for the agreement, and among other things, the Defendant received the benefit of the bargain. Equally, Claimants (Plaintiffs herein) released the District from any liability under IDEA, and the federal and state regulations promulgated thereunder.

116.   Shortly thereafter the Hearing Officer signed a dismissal order regarding all the claims related to the IDEA, brought forward in Plaintiffs complaint filed with the TEA, leaving Plaintiffs free to file this case under Section 504 and the ADA against the School District and

Section 1983 claims against Hardison, Individually.

117. There are no claims in this lawsuit requiring exhaustion.

## VII.  STATE ACTION

118. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth. In addition, each portion below likewise will incorporate by reference any such allegation above it, also as though set forth at length therein.

119. The School District was at all times and in all matters acting under color of federal and state law in regard to the acts and omissions alleged by Plaintiffs.

120. The School District was at all times and in all matters receiving federal funds during the period in question.

## VIII.  UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES & CUSTOMS

121. Plaintiffs incorporate by reference all the above related paragraphs above with the same force and effect as if herein set forth.

122. Plaintiffs contend that the various failures noted above, are due to the fact the School District failed to have policies, procedures, practices and customs in place to assure staff was correctly *hired*, so as to protect Plaintiffs from a known and inherent dangerous situation, violating the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seeks recovery pursuant to 42 U.S.C. §1983.

123. Plaintiffs contend that the various failures noted above, are due to the fact the School District failed to have policies, procedures, practices and customs in place to assure staff was correctly *trained*, so as to protect Plaintiffs from a known and inherent dangerous situation, violating the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seeks recovery pursuant to 42 U.S.C. §1983.

124. Plaintiffs contend that the various failures noted above, are due to the fact the School District failed to have policies, procedures, practices and customs in place to assure staff was correctly *supervised*, so as to protect Plaintiffs from a known and inherent dangerous

situation, violating the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seeks recovery pursuant to 42 U.S.C. §1983.

125. Based upon the operative facts, such acts and omissions rise to the level of deliberate indifference, constituting a violation of the Constitution of the United States, and for which Plaintiffs seeks recovery pursuant to 42 U.S.C. §1983.

## IX.  CLAIMS AGAINST HARDISON PURSUANT TO THE 4TH AMENDMENT

126. Plaintiffs incorporate by reference all the above related paragraphs, as well as those below, with the same force and effect as if herein set forth.

127. Plaintiffs contend that the acts and omissions of Defendant Jennifer Hardison, together violated the rights of A.H. pursuant to the Fourth Amendment of the Constitution of the United States for which he seeks recovery pursuant to 42 U.S.C. §1983.

128. Specifically, Hardison used unnecessary force against A.H.

129. Specifically, Hardison used excessive force against A.H.

130. The acts and omissions of this Defendant injured A.H. thereby.

## X.  CLAIMS AGAINST HARDISON PURSUANT TO THE 14TH AMENDMENT

131. Plaintiffs incorporate by reference all allegations the above related paragraphs with the same force and effect as if herein set forth.

132. In addition and in the alternative to the above, the facts as previously described demonstrate violations of the A.H.'s civil rights pursuant to the *Due Process Clause* of the 14th Amendment to the United States Constitution.

133. Moreover, and also in addition and in the alternative to the above, the facts as previously described demonstrate violations of A.H.'s civil rights by Jennifer Hardison pursuant to the *Due Process Clause* of the 14th Amendment to the United States Constitution.

134. As noted above, A.H. was a student with a severe and pervasive disabilities. While a student with the School District, he was physically abused over the course of time by his Aide, Jennifer Hardison, violating A.H.'s liberty and private interest thereby.

135. In addition and in the alternative, Hardison discriminated against A.H. by failing to keep him safe as compared to his non-disabled peers, thereby violating the *Equal Protection Clause* of the Fourteenth Amendment, for which she is likewise liable to him pursuant to 42 U.S.C. §1983.

136. Such acts, omissions and failures by this Defendant caused injuries to A.H..

## XI.  CLAIMS PURSUANT TO SECTION 504 OF THE REHABILITATION ACT

137. Plaintiffs incorporate and re-allege the above-referenced allegations, as though set forth at length herein. In addition, each portion below likewise will incorporate by reference any such allegation above it, also as though set forth at length therein.

138. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled students unique and individualized needs, and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

139. The facts as previously described demonstrate violations of Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

140. A.H. is a qualified individual with a disability in the United States, as defined in 29 U.S.C. § 705(20).

141. The School District receives federal financial assistance, as defined by 29 U.S.C. §794 and as such, may not discriminate against a person because of their disability.

142. Plaintiffs assert that because the School District failed to keep A.H. safe from harm, and failed to provide him an environment that was not hostile, such failures as noted above, have, together and separately, contributed to violating his rights under Section 504, federal rules and regulations promulgated pursuant thereto, by not keeping him as safe as his non-disabled

peers.

143.    Further, A.H. has a private cause of action for the violation of Section 504 regulations.

144.    Moreover, and likewise in addition and in the alternative, the acts and the omissions of the School District rose to the level of a gross deviation of professional standards of care.

145.    In addition, and likewise in addition and in the alternative, the acts and the omissions of the School District rose to the level of intention discrimination based upon disability.

146.    Last, and likewise in addition and in the alternative, the failure of the School District to respond to mother's complaints about Hardison and others, also rise to the level of deliberate indifference.

147.    Such acts, omissions and failures by the School District caused injuries to A.H.

## XII.  CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT

148.    Plaintiffs incorporate by reference all allegations the above related paragraphs with the same force and effect as if herein set forth.

149.    In addition and in the alternative to the above, the facts as previously described demonstrate violations of the Americans with Disabilities Act, 42 U.S.C. §12131, *et seq*.

150.    Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

151.    The School District is a "public entity" as defined in 42 U.S.C. §12131(1), and receives federal financial assistance so as to be covered by the mandate of the ADA.

152.    The School District and its schools are facilities and their operation constitutes a program and services for ADA purposes.

153.    A.H. alleges, separate and apart from his Section 504 causes of action, that the School District failed and refused to reasonably accommodate and modify its programs and services, so as to provide him publically provided services to the same extent as his non-disabled peers.

154.    Moreover, A.H. was not accommodated with staff who had the necessary and appropriate background to serve him.

155.    Moreover, A.H. was not accommodated with trained staff.

156.    Further, A.H. was not accommodated with staff who were correctly supervised.

157.    Moreover, A.H. was not accommodated with a safe and non-hostile educational environment.

158.    Such acts, omissions and failures by the School District caused injuries to A.H.

## XIII.   PROXIMATE CAUSE

159.    Plaintiffs incorporate by reference all allegations the above related paragraphs with the same force and effect as if herein set forth.

160.    Each and every, all and singular of the foregoing acts and omissions, on the part of the Independent School District, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XIV.   RATIFICATION

161.    Plaintiffs incorporate by reference all allegations the above related paragraphs with the same force and effect as if herein set forth.

162.    The School District ratified the acts, omissions and customs of all school administrators, educators, personnel and staff.

163.    As a result the School District is responsible for the acts and omissions of all school administrators, educators, personnel and staff.

## XV.   DAMAGES

164.    Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

165.    As a direct and proximate result of the Defendants conduct, A.H. has suffered injuries and damages, which he may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to the following:

        a.      A deprivation of educational opportunities in the past and future;

        b.      Physical impairment in the past;

        c.      Physical impairment in the future;

        d.      Physical pain in the past and future;

e.      Reasonable medical care and expenses in the past;

f.      Reasonable medical care and expenses in the future;

g.      Mental anguish in the past;

h.      Mental anguish in the future; and

i.      Various out-of-pocket expenses incurred by his family but for the acts and omissions of the School Board.

166.    By reason of the above, the subject of this lawsuit, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought. Moreover, the District and Defendant Hardison are liable to A.H. for punitive damages.

## XVI.  SPOILATION

167.    Plaintiffs hereby requires and demands that the Austin ISD preserve and maintain all evidence pertaining to any claim or defense related to the assaults or other violations made the bases of this petition and request for due process or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the assault or other violations set forth herein.

74.     Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XVII.  ATTORNEY FEES

168.    Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth.

169.    It was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit.  Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs under 29 U.S.C. §794a, as well as pursuant to the ADA, 42 U.S.C. § 2000d *et seq*., Sections 1981, 1983 and 1988.

## XVIII.  DEMAND FOR JURY TRIAL

170.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs  prays for judgment against the Independent School District and Jennifer Hardison, jointly and severally, in the manner and particulars noted above, and in an amount sufficient to fully compensate A.H. for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Section 504, the ADA, 42 U.S.C. § 2000d *et seq*., and 42 U.S.C. § 1981, 1983 and 1988, together with pre- and post-judgment interest, and court costs expended herein, and for such other relief as this Court in equity, deems just and proper.

Respectfully submitted,

Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
State Bar No. 00783829
marty@cirkielaw.com [Email]

Dominique L. Augustus, Esq.
State Bar No. 24105450
dominique@cirkielaw.com [Email]

Mr. Alonzo Campos, Attorney
The Law Office Of Alonzo Campos
1524 South Interstate 35, Suite 200
Austin, Texas
(512) 554-5976 [Telephone]
(512) 532-6810 [Facsimile]
alonzo@acamposlaw.com [Email]

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of May 2018, I electronically filed the foregoing documents with the Clerk of Court using the CM/ECF system and notice was electronically provided to the following CM/ECF system participant served Ms. Hardiston by regular US mail:

Ms. Holly Boyd Wardell, Attorney
State Bar Number: 00797627
Ms. Jennifer Powell, Attorney
State Bar Number: 00783554
Eichelbaum Wardell Hansen Powell and Mehl, P.C.
4201 W. Parmer Lane, Suite 100
Austin, Texas 78727
(512) 476-9944 (Telephone)
(512) 472-2599 (Facsimile)
Attorneys for Defendant AISD

Ms. Jennifer Hardison
14610 Varrelman Street
Austin, Texas 78725,
*Pro Se*
VIA REGULAR US MAIL

                                        */s/ Martin J. Cirkiel*
                                        Martin J. Cirkiel