# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

No. 19-50664
_____

D.C. Docket No. 1:18-CV-18

United States Court of Appeals
Fifth Circuit

**FILED**

June 9, 2020

Lyle W. Cayce
Clerk

NIDIA HESTON, Natural Mother, Legal Parent and Next Friend of A.H;
ADRIAN HESTON, IV, Natural Parent and Next Friend of A.H.,

> Plaintiffs - Appellants

v.

AUSTIN INDEPENDENT SCHOOL DISTRICT,

> Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas

Before SMITH, GRAVES, and HO, Circuit Judges.

### J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

**Certified as a true copy and issued
as the mandate on Jul 17, 2020**

Attest:

*Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 9, 2020

Lyle W. Cayce
Clerk

No. 19-50664

NIDIA HESTON, Natural Mother, Legal Parent and Next Friend of A.H;
ADRIAN HESTON, IV, Natural Parent and Next Friend of A.H.,

        Plaintiffs - Appellants

v.

AUSTIN INDEPENDENT SCHOOL DISTRICT,

        Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-18

Before SMITH, GRAVES, and HO, Circuit Judges.

PER CURIAM:*

The district court dismissed Plaintiffs' claims under the Americans with
Disabilities Act, § 504 of the Rehabilitation Act, and 42 U.S.C. § 1983 for
failure to exhaust administrative remedies. We affirm.

## I.

A.H. is a minor who was diagnosed with autism, Attention Deficit
Hyperactivity Disorder, and Bipolar Disorder at a young age. Pursuant to the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

Individuals with Disabilities Education Act (IDEA), the Austin Independent School District (AISD) provided A.H. with an "Individualized Education Plan" (IEP) that accommodated his disabilities. Specifically, AISD provided additional support staff to accompany and assist A.H. throughout the school day.

Nidia Heston, A.H.'s mother, repeatedly complained throughout the 2014–15 school year that A.H.'s aides were improperly and insufficiently trained. On multiple occasions she asked that AISD provide A.H. with a designated one-on-one helper. By May 2015, AISD assigned Jennifer Hardison to be A.H.'s personal special-education aide.

Following an incident where A.H. tried to hurt himself, his mother asked for a new aide. She reiterated this request in March 2016, alleging that Hardison was inadequately experienced, trained, and supervised.

Shortly thereafter, A.H. had an "emotional breakdown" in class. In response, Hardison allegedly threw a trash bin at him, resulting in physical injury that included significant dental damage.

A.H.'s parents ("the Hestons") requested a Due Process Hearing with the Texas Education Agency (TEA) in August 2016. In addition to claims under the IDEA, the Hestons filed an amended complaint adding violations of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act, asking that "the Hearing Officer hear the intertwined claims pursuant to Section 504 and the Americans with Disabilities Act along with the IDEA." AISD argued that the TEA Hearing Officer lacked jurisdiction over the ADA and § 504 claims. The Hearing Officer agreed and dismissed those claims.

While the TEA process was pending, the Hestons and AISD reached a settlement agreement. AISD agreed to pay up to $50,000 for A.H. to attend a private school of the Hestons' choice. In exchange, the Hestons agreed to release all claims against AISD "related to the appropriateness of educational

services and resources"—including all IDEA claims—while reserving their rights to file additional "claims pursuant to 42 U.S.C. Section 1983, Section 504 of the 1973 Rehabilitation Act . . ., and the Americans with Disabilities Act."

Plaintiffs subsequently filed suit in federal court, bringing ADA and § 504 violations alongside constitutional claims under § 1983. AISD moved to dismiss under Rule 12(b)(6), arguing that all of the claims had to do with the provision of educational services and were therefore barred for failure to exhaust. The district court found that the claims were, at core, disputes related to A.H.'s educational needs and thus subject to the IDEA's exhaustion requirement. It dismissed the claims without prejudice, a decision Plaintiffs now appeal.

## II.

We review a Rule 12(b)(6) dismissal de novo. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019). Because the case was dismissed at the pleading stage, we assume the Plaintiffs' factual allegations to be true. *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

## III.

The IDEA offers states federal funding conditioned on the provision of a "free appropriate public education" (FAPE) to all children with certain disabilities. 20 U.S.C. § 1412. A FAPE is defined by the statute as "special education and related services." *Id.* § 1401(9). Parents who are unhappy with the education provided to their child are required to exhaust the IDEA's administrative process before taking their grievances to federal court. *See id.* § 1415(i)(2)(A). This process includes the opportunity to file a complaint triggering a preliminary hearing, *id.* § 1415(b)(6), followed by a Due Process Hearing conducted by a neutral hearing officer, *id.* § 1415(f), and the option of mediation at state expense, *id.* §§ 1415(e)(1); (e)(2)(D).

This exhaustion requirement is not limited only to IDEA claims: "[B]efore the filing of a civil action under such laws [as the ADA and Rehabilitation Act] seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." *Id.* § 1415(*l*). Put another way, a party is free to pursue claims apart from the IDEA, but must exhaust the IDEA's remedial process for any such claims that include relief the IDEA can provide. *See McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 644 (5th Cir. 2019) ("[A] plaintiff may invoke any federal law to support a disabled student's claim for an adequate education; the plaintiff just must first exhaust under the IDEA."). The availability of such relief turns on whether or not a FAPE is at issue. *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 753 (2017) ("The only relief that an IDEA officer can give— hence the thing a plaintiff must seek in order to trigger § 1415(*l*)'s exhaustion rule—is relief for the denial of a FAPE."). That is the principal inquiry here.

A.

The Hestons contend that the district court erred in determining that all claims stemmed from the core issue of A.H.'s FAPE and were thus subject to IDEA exhaustion. We find no such error.

To determine whether the alleged ADA, § 504, and § 1983 violations are divisible from the IDEA claim, we look to the Supreme Court's recent guidance in *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017). The Court held that the central focus in evaluating the need for exhaustion is on the gravamen of the complaint—in other words, "whether a lawsuit in fact 'seeks' relief available under the IDEA." *Id.* at 755. If "the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way," exhaustion is mandated. *Id.* A "plaintiff cannot escape § 1415(*l*) merely by bringing her suit under a statute other than the IDEA."

*Id.* at 754. And we ignore "labels" and instead look to the "substance" of the complaint, "setting aside any attempts at artful pleading" that might otherwise cloak claims brought under separate statutes to circumvent § 1415(*l*)'s exhaustion requirement. *Id.* at 755. "The use (or non-use) of particular labels and terms is not what matters"—we look at "substance, not surface." *Id.* And we do so using the "plaintiff's own claims," as he controls the complaint and the attendant relief sought. *Id.*

The Hestons' own pleadings make clear that their claims derive from the requirement to provide a FAPE. As for the ADA and § 504 claims, they admit that the "main accommodation A.H. received is called Special Education services." *Compare* 20 U.S.C. § 1401(9) (defining a FAPE as "special education and related services"). Next, the Hestons' complaint alleges Hardison was inadequately trained and supervised, charging that "Jennifer Hardison had never been correctly trained as to how to accommodate A.H.'s disabling conditions" nor was "correctly supervised by other staff as to how to accommodate A.H.'s disabling conditions." These all relate to Hardison's ability to function as a suitable educational aide for a mentally handicapped student. As the complaint puts it, A.H. suffers from "[a] deprivation of *educational* opportunities in the past and future."

The Hestons attempt to downplay these statements as information merely "provided for context." But the Hestons' § 504 claim is premised on requiring "appropriate and necessary accommodations" tailored to A.H.'s "unique and individualized needs." And those needs, as the Hestons make clear throughout their pleadings, center on having a suitable educational aide to facilitate A.H.'s learning. Similarly, their ADA claim repeats these charges, insisting that "A.H. was not accommodated with staff who had the necessary and appropriate background to serve him" and that he was denied a "safe and non-hostile *educational* environment." The Hestons' § 1983 claim alleges a

Case: 19-50664   Document: 00515493488   Page: 6   Date Filed: 07/17/2020
Case 1:18-cv-00018-RP   Document 68   Filed 07/17/20   Page 7 of 13

No. 19-50664

violation of the Fourteenth Amendment—namely that AISD's failure to hire, train, and supervise staff placed A.H. in a "known and inherent [sic] dangerous situation" with Hardison.[1]  But as pleaded, we read this as little more than the same allegation that AISD failed to monitor and train Hardison so that she could function as a suitable educational aide.  The heart of the complaint across these claims is that AISD failed to provide proper educational accommodation and oversight in the form of an adequately trained and supervised teaching aide for A.H.  And the IDEA requires exhaustion for claims that fundamentally concern a student's educational needs.

To be sure, claims that are solely concerned with physical injury and abuse are not subject to the exhaustion requirements of the IDEA.  *See*, *e.g.*, *F.H. ex rel. Hall v. Memphis City Sch.*, 764 F.3d 638, 644 (6th Cir. 2014) (finding that a minor who brought a suit alleging that he was the victim of verbal, physical, and sexual abuse by his aides was not asserting an educational claim); *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 785 (10th Cir. 2013) (holding that state tort and § 1983 claims relating to incidents of physical abuse did not require exhaustion).  But while the Hestons spotlight Hardison's conduct that eventually led to physical injury, their disability and constitutional claims all stem from a failure to train and supervise educational staff.  The disability claims are framed as a failure to accommodate—and the accommodation, as the Hestons put it, concerns "Special Education services."  And the constitutional claim concerns Hardison's adequacy as an educational aide.  Unlike *Hall* and *Muskrat*, the Hestons' complaint does not allege that Hardison's actions were random acts of violence, but instead presents those allegations in the context of her ability to perform adequately as a special-

---

[1] Plaintiffs later characterize this claim as a Due Process infringement of "liberty, privacy and bodily integrity" where AISD failed to "maintain a safe environment for A.H. to keep him safe from harm."

needs aide: "Instead of providing the correct accommodations to A.H. Jennifer Hardison physically and verbally abused the child." As such, these claims fall squarely within the ambit of A.H.'s educational needs.

*Fry* suggests two "hypothetical questions" that confirm that the gravamen of the complaint concerns a FAPE. First, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Fry*, 137 S. Ct. at 756. The answer to both questions here is "no." A.H. would have no claim for failure to accommodate in a public theater or library because those facilities are not required to accommodate a learning disability by providing a trained and supervised aide. An adult visitor would have no claim under the ADA or Rehabilitation Act for the same reason. This is not a case of "simple discrimination, irrespective of the IDEA's FAPE obligation." *Doe v. Dallas Indep. Sch. Dist.*, 941 F.3d 224, 228 (5th Cir. 2019) (quoting *Fry*, 137 S. Ct. at 756).

And while *Fry* theorizes that a minor would not ordinarily need to exhaust IDEA remedies for a suit where a "teacher, acting out of animus or frustration, strikes a student with a disability," *Fry*, 137 S. Ct. at 756 n.9, the complaint presents Hardison's bad behavior only in the context of her role *as a school aide*.

Finally, the history of the proceedings reinforces our conclusion that exhaustion is required. "[A] court may consider [whether] a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies." *Id.* at 757. "[P]rior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE." *Id.* Here, the Hestons not only brought ADA and § 504 claims before the TEA, but went one

step further by adding those claims to the original IDEA charge in front of the Hearing Officer. They themselves linked the ADA and § 504 to A.H.'s FAPE and provided "strong evidence" that their concerns were really about educational services.

In sum, the Hestons' claims are fundamentally connected to Hardison's actions and suitability as an aide in the service of A.H.'s specialized educational requirements. Their claims thus concern, at bottom, the provision of a free and appropriate education. The "grievances all stem from the alleged failure to accommodate his condition and fulfill his educational needs." *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 133 (3d Cir. 2017). As the district court noted, "A.H.'s complaints about the deficiency of the aide provided through his IEP are therefore complaints about the adequacy of his IEP." Exhaustion was necessary.

## B.

Alternatively, the Hestons argue that they have satisfied the exhaustion requirement.

To appeal, § 1415 requires "findings and decision" from a Hearing Officer. *See* 20 U.S.C. § 1415(g). The Hestons claim that they satisfied that requirement when the Hearing Officer dismissed their claims for lack of jurisdiction. But we have previously held that administrative exhaustion requires "more than pleading a claim"—the administrative body must actually come to a decision. *Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017). Here, the Hearing Officer concluded that she lacked jurisdiction. So there was no decision one way or another on the sufficiency of A.H.'s FAPE. *See Paul G. by and through Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1102 (9th Cir. 2019) (holding that "the only way to obtain an administrative ruling on [Plaintiff's] claim that he was denied a FAPE" was through administrative exhaustion).

No. 19-50664

The Hestons present no case holding that a dismissal for jurisdiction qualifies as administrative "findings and [a] decision." And it's hornbook law that jurisdictional rulings are not substantive determinations on the merits. *See generally Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). A jurisdictional dismissal does not constitute "findings and decision" for purposes of § 1415.

## C.

The Hestons next argue that exhaustion would be futile. "[P]arents may bypass the administrative process where exhaustion would be futile or inadequate." *Honig v. Doe*, 484 U.S. 305, 327 (1988). The Hestons contend that bringing their ADA, § 504, and § 1983 claims before a Hearing Officer would be futile. That is because, the Hestons theorize, they seek money damages, which are not available under the IDEA. We have addressed this species of argument before. While acknowledging the good "textualist case that a claim does not 'seek relief that is also available' under the IDEA if the plaintiff cannot seek the same remedy under the IDEA," we nevertheless joined multiple sister circuits in holding that the "IDEA's exhaustion requirement applies to plaintiffs who seek damages for the denial of a free appropriate public education." *McMillen*, 939 F.3d at 648. We interpreted relief more broadly "to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers." *Id.* (quoting *Charlie F. ex rel. Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68,* 98 F.3d 989, 992 (7th Cir. 1996)). Such an interpretation was necessary so a plaintiff could not "avoid exhaustion 'merely by tacking on a request for money damages.'" *Id.* (citing *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487–88 (2d Cir. 2002)). Here too we conclude that the Hestons cannot avoid exhaustion on their FAPE-related claims simply by including a claim for money damages.

9

No. 19-50664

Alternatively, the Hestons suggest that, because A.H. is no longer a student in the school district, the Hearing Officer can no longer provide any relief. This argument is presented for the first time in the reply brief. We do not consider new arguments brought up at this late stage. *See Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments.").

D.

Finally, the Hestons contend that AISD should be estopped from invoking exhaustion. AISD previously stated that there were "no IDEA issues" or "FAPE issues" before the Hearing Officer, and argued that she lacked jurisdiction to hear the ADA and § 504 claims. So the Hestons assert that AISD should not be able to argue that such claims needed to be exhausted there first. The basic argument comes down to this: Because AISD argued exhaustion was not necessary then, it should not be allowed to do so now.

Judicial estoppel is an equitable doctrine that "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted). The purpose is to "to protect the integrity of the judicial process and to prevent unfair and manipulative use of the court system by litigants." *United States v. McCaskey*, 9 F.3d 368, 379 (5th Cir. 1993). Though estoppel applies at our discretion, we have identified three general elements: (1) "the party's position must be 'plainly inconsistent with its prior position'"; (2) "the party must have convinced 'a court to accept the prior position'"; and (3) "the party must not have acted inadvertently." *United States v. Farrar*, 876 F.3d 702, 709 (5th Cir. 2017) (cleaned up) (quoting *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 490 (5th Cir. 2016)).

The district court concluded that judicial estoppel did not apply here because AISD's previous position that the Hearing Officer lacked jurisdiction

was not inconsistent with its current argument for mandatory exhaustion. Specifically, the district court found that AISD sought to dismiss the ADA and § 504 claims "before knowing that the Hestons would characterize their non-IDEA claims as denials of a FAPE."

We agree—AISD could not have predicted what future claims the Plaintiffs would bring under the ADA and § 504, and if they would center on a FAPE. In fact, the ADA and § 504 violations alleged in the Due Process complaint are dissimilar from the ones presented now—so we cannot say that AISD's positions now and then are "plainly inconsistent."

\* \* \*

Because the claims as presented have to do with the proper provision of educational services, they require administrative exhaustion. We affirm.

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

July 17, 2020

Ms. Jeannette Clack
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

     No. 19-50664   Nidia Heston, et al v. Austin Indep School
                     District
                     USDC No. 1:18-CV-18

Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                     Sincerely,

                     LYLE W. CAYCE, Clerk

                     By: _____
                     Monica R. Washington, Deputy Clerk
                     504-310-7705

cc:  Ms. Selene Ann Almazan-Altobelli
     Mr. Martin J. Cirkiel
     Ms. Jennifer Archimbaud Powell
     Ms. Ellen Marjorie Saideman
     Ms. Holly B. Wardell